ROBERT BROWN, ET AL. *v.* MARYLAND UNEMPLOYMENT COMPENSATION BOARD

[No. 8, October Term, 1947.]

234

Decided November 13, 1947.

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Maurice J. Pressman* for the appellants.

*Hall Hammond, Attorney General,* and *Aaron A. Baer, Special Assistant Attorney General,* for Maryland Unemployment Compensation Board.

COLLINS, J., delivered the opinion of the Court.

The employer in this case, The American Radiator and Standard Sanitary Corporation, employed men belonging

to one Committee for Industrial Organization union and three separate American Federation of Labor unions. The employer had labor contracts with both the C.I.O. union and the A.F.L. unions all of which expired on February 1, 1946. All these unions were negotiating with the employer for a renewal of their contracts. Each organization had its own independent bargaining unit. According to the testimony there was no agreement between the C.I.O. union and the A.F.L. unions to ally themselves for the purpose of consummating their individual contracts with the employer.

On March 5, 1946, about 11 A. M. one of the A.F.L. unions composed of machine shop repairmen went out on strike. The members of the C.I.O. remained at work until the end of that day. On the following day the claimants and appellants here, who are members of the C.I.O. union, came to the plant to work. They found that the gate was closed. One of the appellants, Robert Brown, testified that he didn't know whether the gate was locked. He said the appellants did not "bother" the gate because they saw men walking up and down in front of the gate and these men were picketing the plant. They belonged to the A.F.L. union. In the constitution of the C.I.O. union is a provision that its members shall not cross picket lines. One of the C.I.O. union representatives testified: "Our people were willing to work, but belonging to a union that doesn't believe in crossing picket lines, when these people stopped them and told them they had a line there, they didn't try to go through. They value their heads more than they do $5.00 a day." On Friday, March 22, 1946, the A.F.L. dispute ended and the employees of both unions returned to work, although the contract was not renewed with the C.I.O. until May 8, 1946. As the striking members of the A.F.L. union were the machine shop repairmen, it was admitted by the personnel director of the employer that if the appellants here had returned to the plant to work on March 6, 1946, they could not have worked more than a day and a half or probably two days.

The Maryland Unemployment Compensation Board having taken testimony in the matter on June 7, 1946, found that the appellants' unemployment after March 5, 1946, was due to a stoppage of work which existed because of a labor dispute at the premises of the American Radiator and Standard Sanitary Corporation and unemployment benefits were denied. The claimants, feeling aggrieved, appealed to the Superior Court of Baltimore City. Under the law, as a review by the Court is confined to the record made before the Board, the trial judge read the record and after hearing arguments of counsel, affirmed the decision of the Maryland Unemployment Compensation Board and rendered a judgment in favor of the defendants for costs. From that decision Robert Brown and other employees appeal to this court.

Section 5 of the Unemployment Compensation Law, Article 95A of the Annotated Code of Maryland (1943 Supplement), provides in part that an individual shall be disqualified for benefits—

"(d) For any week with respect to which the Board finds that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed, provided that this sub-section shall not apply *if it is shown to the satisfaction of the Board that:*

"(1) *He is not participating in* or financing or directly interested in the labor dispute which caused the stoppage of work * * *.

* * *. (Italics supplied here.)

The appellants claim (1) that their refusal in this case to cross the picket line of another union during the striking does not disqualify them from benefits, as there is no evidence legally sufficient to show that their unemployment was due to a stoppage of work because of a labor dispute in which they participated or financed or were directly interested; and (2) that the decision of the board is unlawful, unreasonable, and against the manifest weight of the evidence.

On appeal under Section 6 (h) of Article 95A, *supra,* the findings of the Board as to the facts if supported by evidence, in the absence of fraud are conclusive. The jurisdiction of the courts is confined to questions of law. If the finding of fact by the Board is supported by substantial evidence that finding of fact is conclusive on the court. As long as the commission confines itself within the limits of the power delegated, the court will not interfere with the exercise of its discretionary powers. The review of the facts is confined to whether there is evidence to support the finding of the commission, and in absence of fraud, that finding is conclusive. There are many Maryland cases to support this principle. Article 95A, sec. 14 (c) ; *Wiley v. School Commissioners,* 51 Md. 401; *Walter v. Montgomery County,* 180 Md. 498, 25 A. 2d 682; *Heaps v. Cobb,* 185 Md. 372, 380, 45 A. 2d 73, 76; *Lewis v. Cumberland,* 189 Md. 58, 54 A. 2d 319, 324; *Tucker et al. v. American Smelting and Refining Company,* 189 Md. 250, 55 A. 2d 692; *Mahoney et al. v. Byers,* 187 Md. 81, 48 A. 2d 600.

Appellants contend that as the board merely found that the unemployment of the claimants was due to a labor dispute and did not find, as the statute requires, that the claimants participated in or financed or were directly interested in the labor dispute, that its decision is of no effect. However, the appeal is from the board's decision under section 6 (h), *supra,* and that appeal is not from the finding on some part of the evidence. *Baltimore v. Perticone,* 171 Md. 268, 278, 188 A. 797. Furthermore, in the claimants' appeal to the referee, filed June 25, 1946, the following statement is made by the claimants:

"1. The evidence does not support the finding of the Board that the unemployment of the Claimants after March 5, 1946, was due to a stoppage of work which existed because of a labor dispute at the premises of the Employer in which labor dispute the Claimants were participating, financing or directly interested or that they belong to a grade or class of workers of which, im-

mediately before the commencement of the said stoppage, there were members employed at the premises at which the said stoppage occurred, any of whom were participating, financing, or directly interested in the said dispute."

In the answer filed by the Unemployment Compensation Board to that appeal the following statement is made by the Unemployment Compensation Board:

"Further answering said Petition generally, your Respondent avers that the Board found from the evidence in the case that the claimants' unemployment was due to a stoppage of work which existed because of a labor dispute at the premises at which they were last employed and that they were participating in said labor dispute and that said finding of the board is supported by the evidence and, there being an absence of fraud in accordance with sub-section (h) of Section 6 of the Unemployment Compensation Law, Article 95A of the Annotated Code of Maryland, (1943 Supplement), is conclusive on this Honorable Court."

It therefore appears that there is no question but that the Board found that the claimants "participated in * * * the labor dispute which caused the stoppage of work."

As appellants admit there was work at the plant for them on March 6, 1946; as they admit that the stoppage of work existed because of the labor dispute; as they admit the strike of the A.F.L. union was at the factory where they were employed; and as there is substantial evidence to support the finding of the board that appellants refused to cross the picket line of this A.F.L. union; we are presented with the legal question whether failure of the appellants to cross the picket line of the A.F.L. union constituted a participation in the labor dispute of the A.F.L. union. As this is a case of first impression in Maryland we must look elsewhere for the authorities.

The California Unemployment Act, Gen. Laws, Act 8780d, provides that an individual is not entitled to benefits "if he left his work because of a trade dispute." In *Bodinson Manufacturing Company v. California Em-*

*ployment Commission et al.,* 17 Cal. 2d 321, 109 P. 2d 935, 940, decided February 7, 1941, the respondents were not members of the union which went on strike but were unemployed solely because they refused to pass through the picket lines which the striking union had established. The California Employment Commission granted the respondents employment benefit payments. The California court held, without a dissent, that the question presented was one of law; that under the proper construction of the statute an employee who is prevented from working through no act of his own is entitled to compensation. The court held that such was not the case in the matter then before it. The court further held that:

"If the picket line was maintained within the limits permitted by law, as this one presumably was, no physical compulsion was exerted to prevent corespondents from working. They were unemployed solely because, in accordance with their union principles, they did not choose to work in a plant where certain of their fellow employees were on strike. Their own consciences and faith in their union principles dictated their action. This choice is one which members of organized labor are frequently called upon to make, and in the eyes of the law this kind of choice has never been deemed involuntary. * * * In brief, disqualification under the act depends upon the fact of voluntary action, and not the motives which led to it. The legislature did not seek to interfere with union principles or practices. The act merely sets up certain conditions as a prerequisite to the right to receive compensation, and declares that in certain situations the worker shall be ineligible to receive compensation. Fairly interpreted, it was intended to disqualify those workers who voluntarily leave their work because of a trade dispute. Corespondents in this proceeding in fact 'left their work because of a trade dispute' and are consequently ineligible to receive benefit payments."

The Unemployment Compensation Act of the State of Washington, Rem. Rev. Stat. sec. 9998—101 *et seq.,*

in reference to disqualification from compensation due to unemployment caused by a labor dispute, is substantially similar to that of the State of Maryland. In the case of *In re Persons Employed at St. Paul & Tacoma Lumber Co.*, 7 Wash. 2d 580, 110 P. 2d 877, decided February 25, 1941, the members of a Timber Workers' Union employed by the Lumber Company went on strike. A few days later sawmill union men joined this strike and established picket lines and all employees of the company including shingle workers who were members of a different union refused to work. Almost all of the employees of the lumber company claimed unemployment compensation. The commission denied compensation because it found claimants were participating in a labor dispute by refusing to cross picket lines. The circuit court reversed the commission and the commission appealed. On appeal it was held that the Appeal Court could review the facts only so far as necessary to determine whether the commission had acted capariciously and whether he had applied the law properly to the facts. That court further said that the finding of the commissioner that the only reason for unemployment was claimants' refusal to pass through the picket line should not be reversed where there was substantial evidence on which that finding was based. Refusal by non-striking workers to pass through the picket line established by another union constituted "participation" in a labor dispute within the meaning of the Act, so as to preclude recovery of compensation by non-striking workers. This majority opinion was concurred in by eight justices. One justice filed a dissenting opinion in that case in which he held that refusal to cross a picket line is not "participating in" a labor dispute. He contended that to hold that it did, would be to force workers to cause a riot and subject themselves to bodily harm, in order to attempt to return to work, so that they could be eligible for unemployment compensation. This dissenting opinion agrees with the appellants' contention in the case at bar.

In the case of *Andreas et al. v. Bates et al.*, 14 Wash. 2d 322, 128 P. 2d 300, decided July 24, 1942, the lumber company owned and operated a lumber manufacturing plant including a sawmill and a shingle mill. Although the plant was not enclosed, two main gates were used by employees in entering and leaving the plant. The respondents were members of a Shingle Weavers' Local. The sawmill employees belong to a Saw Mill Workers' Local. The whole plant was closed down on October 28th by orders of the plant manager. Work was to have been resumed on November 4th. After the closing of the plant on October 28th and before the opening on November 4th the Sawmill Workers' Local went on strike. The striking union had no jurisdiction over the shingle-weavers but the latter according to union policy and a contract between the union and the shingle manufacturers were not required to cross legitimate picket lines and in fact did not so cross the picket lines in this case. The shingle-weavers claimed unemployment compensation for the time they were out of work. The Unemployment Compensation Commissioner under a statute substantially similar in relevant provisions to that of Maryland held that the respondents were not entitled to compensation because they were out of work as a result of a labor dispute in which they participated by reason of failure or refusal to report to work. An appeal was taken to the Appeal Commission who affirmed the decision of the Unemployment Compensation Commissioner. Thereupon an appeal was taken to the County Court which found that the actions of the commissioner were arbitrary, capricious, and not supported by competent evidence. The case was then appealed to the Supreme Court of the State of Washington. That Court, following the former case of *In re Persons Employed at St. Paul & Tacoma Lumber Co., supra,* held that the record justified the finding of the Commissioner that the stoppage of work of the shingle-weavers was due to a labor dispute and that respondents participated in that dispute by refusing to report to work and pass through the picket line. It was

held further that in any event there was an entire failure by respondents to show that they were not participating in the dispute. That court found that the reason for respondents' failure to report for work was that they did not desire to cross the picket lines and that such refusal constituted a participation in the labor dispute. The judgment of the County Court was reversed with instructions to enter judgment affirming the decision of the Commissioner.

In *Matson Terminals, Inc., et al. v. California Employment Commission,* 24 Cal. 2d 695, 151 P. 2d 202, decided August 18, 1944, the claimants for unemployment compensation were longshoremen who were out of work because they refused to cross the picket line of a striking ship's clerk union. The California Unemployment Compensation Act disqualified the claimant from compensation if he left work because of a trade dispute, and for the period during which he continues out of work by reason of the fact that the trade dispute is still in active progress in the establishment where he was employed. The court held that claimants could have continued working at the same docks for the same employer, under the same dispatching arrangements through a hiring hall as they had before the ship clerks' strike, and they would have done so except for that strike and their unwillingess to cross the clerks' picket lines. Their failure to work was attributable solely to the trade dispute between the clerks' union (of which claimants were not members) and the employers. The court there held it was immaterial that some claimants were not instructed to work or were told to return to the hiring hall. Their work was available to them as it had been in the past, but pursuant to union principles they voluntarily refused it. They asserted that they would not work behind a picket line and therefore, they left their work because of a trade dispute. Five justices joined in this majority opinion, while two dissented.

We are referred to many other cases by the appellants and the appellee. Except for those hereinbefore re-

viewed the others are not helpful on the question before us in this case.

Appellants further contend that even if it should be held that the claimants refused to cross the picket line and that such refusal constituted a participation in the labor dispute, then the only period for which the claimants should be disqualified is for one or two days, because if they had crossed the picket line and presented themselves for work on March 6th, then, at the most, the plant could have operated for only one or two days without the A.F.L. men who were on strike. With this contention we do not agree. It is admitted that the stoppage of work until March 22, 1946, was due to the labor dispute with the A.F.L. union which went on strike, and that this stoppage of work lasted until the labor dispute ended on March 22, 1946. If the claimants participated in the strike at all by refusing to cross the picket lines for one or two days when work was available they participated in the strike for its entire duration. The stoppage of work for the entire period of approximately three weeks was due to a labor dispute and by participating in that labor dispute, by refusing to cross the picket lines when the work was available the appellants became participants in that labor dispute during its entire duration. Such is the only reasonable interpretation to give to the words of the statute, Section 5 (d) and (d) (1), *supra.*

We are of opinion there was substantial evidence to support the finding of the Unemployment Compensation Board, that the unemployment of the claimants was due to a stoppage of work which existed because of a labor dispute at the premises at which they were last employed and that the claimants refused to cross the picket line established by the A.F.L. union. Therefore, that finding of fact is conclusive on the court.

We are also of opinion on the legal question presented, that failure of the appellants to cross the picket line of the A.F.L. union constituted a participation in the labor dispute of that union, and that the Unemployment Com-

pensation Board was correct in refusing compensation to the claimants during the period of the A.F.L. strike. The claimants had the choice of either crossing the picket line or of remaining away from their employment. This was a voluntary choice on their part. If the constitution of their union forbids the crossing of the picket line, their act in joining and remaining a member of a union with that rule was voluntary on their part. If they had crossed the picket line and worked when work was available they would have been entitled to their unemployment benefits until work was supplied. Their refusal to cross the picket line being the voluntary act of the claimants, they must accept the consequences of that refusal. The judgment will be affirmed.

*Judgment affirmed, with costs.*