STEAMSHIP TRADE ASSOCIATION OF BALTI-
MORE, INC., ET AL. *v.* MARYLAND UNEMPLOY-
MENT COMPENSATION BOARD ET AL.

[No. 116, October Term, 1947]

216

*Decided March 19, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Stevenson Masson* and *Edward M. Seidl,* with whom was *Carlyle Barton* on the brief, for the appellants.

*Everett L. Buckmaster* and *George L. Clarke,* with whom were *Weinberg & Green* on the brief, for the appellee, Leroy Spencer, and International Longshoremen's Ass'n.

*Hall Hammond, Attorney General,* and *Aaron A. Baer, Special Assistant Attorney General,* for the appellee Maryland Unemployment Compensation Board.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Steamship Trade Association of Baltimore, Inc., Atlantic and Gulf Stevedores, Inc., The Rukert Terminals Corporation and The Lone Star Stevedoring Company, Inc., appellants, against The Maryland Unemployment Compensation Board, Leroy Spencer and International Longshoremen's Association, appellees, from an order of the Superior Court of Baltimore City affirming the decision of the Unemployment Compensation Board that for the period after September 13, 1946, the claimants, appellees, were not within the disqualifying provisions of Section 5 (d) (1) of Article 95A (Unemployment Compensation Law), of the Annotated Code of Maryland, (1943 Supplement).

The Seamen's Union of the Pacific and the Seafarer's International Union, both organizations of unlicensed crew personnel, affiliated with the American Federation of Labor (A.F.L.), aboard American vessels, went on strike on September 6, 1946. The claimants in this case being longshoremen and members of the International Longshoremen's Association, affiliated with the A.F.L., ceased performing their normal activities at

the Port of Baltimore. This strike was settled on September 13, 1946.

On September 14, 1946, the National Maritime Union (N.M.U.), affiliated with the Congress of Industrial Organizations, (C.I.O.), also representing unlicensed personnel of crews, aboard American vessels, began a strike which was not settled until September 26, 1946.

On October 1, 1946, the Masters, Mates, and Pilots Association, (M.M. & P.A.), licensed deck officers affiliated with the A.F.L., and the Marine Engineers Beneficial Association, (M.E.B.A.), licensed engine room officers affiliated with the C.I.O., and all aboard American vessels, went on a strike which was not settled until October 25, 1946.

During the entire period of these strikes by ship personnel from September 6, 1946, to October 25, 1946, the claimants here failed to carry out their normal work of loading ships at the Port of Baltimore.

The Maryland Unemployment Compensation Board, (the Board), on January 30, 1947, found that for the period between September 6, 1946, and September 13, 1946, the unemployment of the longshoremen was due to a stoppage of work caused by a labor dispute in which the longshoremen, as claimants, were sympathetic participants, and the claimants were denied compensation during that period from September 6, 1946, to September 13, 1946. No appeal was taken from that part of the Board's finding.

Section 5 of the Unemployment Compensation Law, Article 95A of the Annotated Code of Maryland (1943 Supplement), provides in part that an individual shall be disqualified for benefits—

"(d) For any week with respect to which the Board finds that his unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed, provided that this sub-section shall not apply *if it is shown to the satisfaction of the Board that:*

(1) *He is not participating in* or financing or directly interested in the labor dispute which caused the stoppage of work * * *. " (Italics supplied here.)

The Board further found in its order of January 30, 1947, that between the periods of September 14, 1946, to September 26, 1946, and October 1, 1946, to October 25, 1946, respectively, the longshoremen, the claimants here, attempted to cross the picket lines established by the strikers and withdrew after the threatening attitude of the strikers made it evident that there might be considerable trouble, and the reason the appellees did not cross the picket lines at the place where they were to work, was because of fear of physical violence. Therefore, the Board found that for the period from September 14, 1946, to October 26, 1946, the unemployment of the claimants was not due to a stoppage of work caused by a labor dispute in which the claimants were participating or financing or directly interested, and compensation was allowed.

From the order of the Superior Court of Baltimore City affirming this allowance of compensation to the claimants here for the periods from September 14, 1946, to September 26, 1946, and from October 1, 1946 to October 25, 1946, the appellants appeal here.

By the provisions of Article 95A, *supra*, Section 6 (h), the findings of the Board as to the facts, if supported by evidence in the absence of fraud are conclusive. The jurisdiction of the courts is confined to questions of law. If the finding of facts by the Board is supported by substantial evidence, that finding of fact is conclusive on the courts. The review of the facts is confined to whether there is evidence to support the finding of the Board. In the absence of fraud that finding is conclusive. Article 95A, sec. 14 (c) ; *Wiley v. School Commissioners,* 51 Md. 401; *Walter v. Montgomery County,* 180 Md. 498, 25 A. 2d 682; *Heaps v. Cobb,* 185 Md. 372, 380, 45 A. 2d 73, 76; *Lewis v. Cumberland,* 189 Md. 58, 54 A. 2d 319, 324; *Tucker et al. v. American Smelting & Refining Co.,* 189 Md. 250, 55 A. 2d 692; *Mahoney et*

al. v. Byers, 187 Md. 81, 48 A. 2d 600; Brown v. Maryland Unemployment Compensation Board, 189 Md. 233, 55 A. 2d 696. In stating the material facts, therefore, we must state as facts evidence most favorable to the findings of the Board. Tucker v. American Smelting & Refining Co., 189 Md. 250, 55 A. 2d 692, supra.

The basic question before this Court is whether there were material facts to support the findings of the Board that the appellees did not participate in the strike of the N.M.U. from September 14, 1946, to September 26, 1946, and in the strike of the M.M. & P.A. and M.E.B.A. from October 1, 1946, to October 25, 1946.

It is admitted by the claimants that they did not cross the picket lines established by the strikers on the dates in question. They allege, and the Board found, that the reason the appellees did not cross these picket lines was because of a fear of physical violence evidenced by the threatening attitude of the strikers.

The courts must presume that strikers are law-abiding. There must be more than a mere theatrical threat of violence. The fear of violence must be real and not nebulous. Just because claimants say that they are afraid of the pickets is not enough and the mere presence of the pickets is not enough to excuse claimants from crossing picket lines.

The evidence before the Board in the case at bar to support its findings and most favorable to the decision of the Board follows. On September 13, 1946, two gangs of longshoremen were ordered to go on a fertilizer ship to work. Union delegates went with the men to see that nothing happened to them. When they arrived at the ship, police were there. Also at the ship were pickets with clubs and any other kind of weapons "they could get hold of." If the longshoremen had tried to go through the picket lines there would have been a fight. On September 14, 1946, two more gangs of longshoremen were ordered to the same place. Pickets came down by truckloads and with clubs. The picket lines had been augmented and the strikers dared the longshoremen to

go through. On various occasions during the strikes the lives of the longshoremen were threatened. The appellants' president had a conference with the police department which promised that protection would be given to anyone who wanted to work. According to the record, however, he asked for protection only for the staff organizations of various officials in the event they wanted to go on a vessel. There is testimony in the record that this protection was asked for the staff organization but not for the longshoremen, the claimants in this case. It is difficult to understand why there was a discrimination in favor of the staff, and the appellants did not ask for protection for the longshoremen. There is testimony in the record that the longshoremen were not assured of any protection. The Vice-President of the Steamship Trade Association, one of the appellants here, admitted that the longshoremen were afraid to cross the picket lines. The Chairman of the Trade Practices Committee of the Steamship Trade Association stated: "You have, as far as we can find out, supported the strike by respecting the picket lines. You give a very good reason for it, I'll admit. You say the men's lives might be in danger. I'll admit that." It is difficult to understand how the Board was arbitrary in finding that the reason the appellees did not cross the picket lines was because of fear of violence when the appellants themselves admit that claimants did fear violence with good reason. We cannot characterize as arbitrary the action of the Board in drawing the same conclusion as appellants drew from the facts. We find that there was sufficient evidence in this case to support the finding of the Board.

We recently held in the case of *Brown v. Maryland Unemployment Compensation Board,* 189 Md. 233, 55 A. 2d 696, 698, that refusal to cross picket lines constituted a participation in the labor dispute such as to make those claimants who voluntarily refused to cross such picket lines ineligible for unemployment compensation. In that case there was no evidence of any threaten-

ing attitude on the part of the strikers and no evidence of fear of violence. The only statement as to any violence in that case was a statement by one of the union representatives that the persons who did not cross the picket lines "valued their heads more than they do $5.00 a day." In that case we reviewed the leading decisions on the question as to whether failure to cross a picket line constituted a participation in a strike and those cases will not be again reviewed here. One of the cases relied on by this Court was that of *Bodinson Manufacturing Company v. California Employment Commission et al.*, 17 Cal. 2d 321, 109 P. 2d 935, 940. We quoted from the opinion in that case, which held that failure to cross a picket line constituted participation in a strike, the following: "If the picket line was maintained within the limits permitted by law, as this one presumably was, no physical compulsion was exerted to prevent corespondents from working."

It was said by this Court in the case of *Saunders v. Maryland Unemployment Compensation Board*, 188 Md. 677, 53 A. 2d 579, 581, in reference to the Maryland Unemployment Compensation Act: "The purpose of the statute was to alleviate the consequences of involuntary unemployment. It was not intended to penalize or subsidize either employees or employers, lawfully engaged in a labor dispute. It was not intended to compel striking workmen to remain without its benefits longer than their own action made necessary. Nor was it intended to compel employers to finance their employees in a strike against them. It was not concerned at all with labor disputes, except in so far as it became necessary to consider them in deciding when unemployment was voluntary and when it was involuntary."

We cannot say that the finding of the Maryland Unemployment Compensation Board in this case was arbitrary and contrary to law. The order will therefore be affirmed.

*Order affirmed, with costs.*