EMPLOYMENT SECURITY BOARD ET AL.
*v.* LECATES

[No. 39, September Term, 1958.]

*Decided November 18, 1958.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*James N. Phillips* and *J. Robert Brown,* with whom were *C. Ferdinand Sybert, Attorney General, Bernard S. Melnicove, Special Assistant Attorney General,* and *E. Dale Adkins, Jr.,* on the brief, for appellants.

No brief and no appearance for appellee.

HORNEY, J., delivered the opinion of the Court.

This appeal involves the payment of benefits under the provisions of the Unemployment Insurance Law to an employee who had been discharged by his employer. The Circuit Court for Wicomico County reversed the findings of the Employment Security Board of Maryland and remanded the case for further action, which, in effect, required the payment of unemployment compensation to the employee. The Board appealed. The employee did not participate in the appeal to this Court.

Linwood M. LeCates (the employee *or* claimant) was employed by John H. Dulany & Sons (the employer) as a supervisor in its food processing plant in Fruitland at a salary of $65 per week. The employee at the time he was promoted to supervisor was told by the plant manager that he "would have to mind his p's and q's throughout his stay with the company." Until the occurrence of the incident which brought about his discharge the employer considered the employee to be a responsible person.

On a prior occasion the employee had borrowed and used a company truck and returned it without incident. But on Saturday, November 10, 1956, he took a truck from the premises of his employer for his personal use without permission. It was customary for the employer to keep several motor vehicles parked within an enclosed area in the rear of the plant yard. A watchman, who was on duty on week-

ends, had authority to permit the use of the trucks. The truck the employee used had been parked near a back gate out of sight of the watchman. His supervisory duties entitled him to possess a key. He used it to gain entrance to the back gate. The employee's license to operate a motor vehicle had been suspended or revoked, and he stated he thought the plant officials should have been aware of this fact since it had been published in the local newspapers. While driving the truck he became involved in an accident on a street in Salisbury. He did not report the accident promptly to the watchman, his employer or the police. Instead he left the truck parked on the outside of the enclosed area back of the plant where it was found by the watchman, who did not know anyone had planned to borrow it. Upon examining the truck the watchman discovered bits of trash with the employee's name on them, indicating that the employee had operated the truck. The truck had been damaged. The watchman notified the company representative in charge of the trucks immediately. On Monday, November 12, 1956, the representative, in company with the State Police, went to the home of the employee to determine who had used the truck and to discuss the nature of the accident. The employee did not discuss the matter with the representative, but he did report the accident when he went on duty at 6 p.m. the same day. The State Police charged the employee with driving without a license and with leaving the scene of the accident without identifying himself and he subsequently forfeited collateral in the sum of $110.75. In response to a question by the referee concerning notice to the company, the employee stated, "I should have done it right then; but I just slept, that's all, I figured I'd report it when I went to work." After his discharge, the employee filed a claim for unemployment compensation.

The referee found that the claimant did not voluntarily leave work without good cause within the meaning of Code (1951) Art. 95A § 5 (b), and that he was discharged for deliberate and willful misconduct connected with his work within the meaning of § 5 (b), *supra*. The Board affirmed the referee, and the claimant was denied benefits from November 12, 1956, until such time as he became reemployed

and earned ten times his weekly benefit and thereafter became unemployed through no fault of his own. The claimant appealed to the circuit court.

The pertinent sections of the Unemployment Insurance Law [Code (1951) Art. 95A], with which we are presently concerned, provide:

[Section 5. Disqualification for Benefits.] [1]

"An individual shall be disqualified for benefits— (b) For any week in which his unemployment is due to his leaving work voluntarily without good cause, or to his actual or threatened *deliberate and wilful misconduct connected with his work,* if so found by the Board. Such disqualification shall continue until such individual has become reemployed and has earnings therein equal to at least ten (10) times his weekly benefit amount." (Emphasis added).

[Section 6. Claims for Benefits.]

"(h) (Judicial Review.) * * * In any judicial proceeding under this section, the findings of the Board as to the facts, *if supported by evidence* and in the absence of fraud, shall be conclusive, and the jurisdiction of * * * [the] court shall be confined to questions of law. * * *." (Emphasis added.)

The Board presents two questions on this appeal. Actually they are but separate parts of the same question. Whether the findings of the Board as to the facts are supported by the facts necessarily must depend on whether the acts of the claimant constituted deliberate and willful misconduct connected with his work. In fact, the real question involves (i) consideration of the meaning of "deliberate and wilful misconduct" and (ii) a determination of whether such *conduct* was in law "connected with his work."

---

1. Chapter 441 of the Acts of 1957 repealed former § 5 (a) relating to discharge for a criminal act, and rewrote § 5 (b), and divided it into two parts: 5 (a) relating to unemployment from voluntarily leaving work and 5 (b) relating to discharge for *gross* misconduct. Former § 5 is now § 6 in the Code of 1957.

In unemployment compensation cases we have consistently held, as the law requires, that the findings of the Board as to the facts are conclusive, if there is evidence to support such findings. The court's jurisdiction, in such cases, is specifically limited to questions of law. *Mitchell, Inc. v. Md. Emp. Sec. Bd.,* 209 Md. 237, 121 A. 2d 198 (1956) ; *Md. Emp. Security Bd. v. Poorbaugh,* 195 Md. 197, 72 A. 2d 753 (1950) ; *Tucker v. American S. & Ref. Co.,* 189 Md. 250, 55 A. 2d 692 (1947) ; *Brown v. Md. Unemp. Comp. Board,* 189 Md. 233, 55 A. 2d 696 (1947). See also *Franke v. Unemployment Compensation Board of Rev.,* 166 Pa. Super. 251, 70 A. 2d 461 (1950). In stating the material facts, the court should state as facts such evidence as is most favorable to the findings of the Board. *Steamship Ass'n. v. Unemp. Comp. Bd.,* 190 Md. 215, 57 A. 2d 818 (1948) ; *Tucker v. American S. & Ref. Co., supra.* Moreover, in reviewing the facts, a court is confined to determining whether there is evidence to support the findings of the Board, and in the absence of fraud, that finding, as stated above, is conclusive. *Brown v. Md. Unemp. Comp. Board, supra.* But, if the facts and the inferences to be drawn therefrom are undisputed, as they are in this case, then a construction of the statute, as applied to such undisputed facts, is, of course, a question of law. *Mitchell, Inc. v. Md. Emp. Sec. Bd., supra,* and cases therein cited; *Nance v. Gall,* 187 Md. 656, 51 A. 2d 535 (1946).

(i). Deliberate and Willful Misconduct.

The misconduct for which the claimant was discharged and subsequently denied benefits involved a series of events resulting from the unauthorized use of a company truck. He had an accident while using the truck, and returned it to a point outside of the plant of his employer. He did not report the accident until he returned to work two days later. In the meantime, a company representative, accompanied by the State Police, went to the home of the claimant, who would not discuss the matter with the representative, although the record does not show the reason. He was charged by the State Police with operating a motor vehicle without a license and with leaving the scene of an accident without identifying

himself and subsequently forfeited the collateral he had posted. He was not charged with unauthorized use. The record does not disclose the exact nature of the duties of the claimant when he was working, but he had been employed in a supervisory capacity, indicating that he must have been some sort of an overseer, inspector or superintendent. Moreover, when he was promoted to the position of a supervisor he was warned that he would have to mind his "p's and q's." It is not disputed that the accident occurred off of the employer's premises at a time when the claimant was not actually on duty.

When is the misconduct of an employee "deliberate and wilful"? At the outset we should observe that the legislature, by Chapter 496 of the Acts of 1947 [1947 Cum. Supp. Art. 95A § 5 (b) and (c) intended to distinguish between "deliberate and wilful misconduct" and "misconduct" of a lesser degree. It is also proper to note that what is "deliberate and wilful misconduct" will vary with each particular case. Here we "are not looking simply for substandard conduct * * * but for a wilful or wanton state of mind accompanying the engaging in substandard conduct. * * * Turning from the requisite state of mind to the type of act or failure to act necessary for 'misconduct' we are necessarily thrown into a shifting framework of reference. * * * [T]he 'wrongness' of the conduct must be judged in the particular employment context. * * * [C]ertain conduct will be so flagrant that indulging in it will undoubtedly be 'misconduct' whether or not a specific rule prohibiting it has been expressly formulated and posted or otherwise announced to the employees." Sanders *Disqualification For Unemployment Insurance* 8 Vand. L. Rev. 307, 334 (1955).

In 81 C. J. S. *Social Security and Public Welfare* § 162 "deliberate" and "wilful" misconduct is defined as follows:

> "Deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee constitutes misconduct. * * * [W]illfulness exists where the injury to the employer, although realized, is so recklessly disre-

garded that, even though there is no actual intent, there is at least a willingness to inflict harm, or a conscious indifference to the perpetration of the wrong; in such case a constructive intention is imputable to the employee."

See *Sabatelli v. Unemployment Comp. Bd. of Rev.,* 168 Pa. Super. 85, 76 A. 2d 654 (1950); *Philadelphia Tr. Co. v. Unemployment Comp. Bd. of Rev.,* 186 Pa. Super. 142, 141 A. 2d 410 (1958).

In the *Philadelphia Transit Company* case, *supra,* the Superior Court of Pennsylvania said at p. 413:

" 'Willful misconduct' is not defined in the statute[2] [nor is it in the Maryland statute], but this Court has held it to comprehend an act of wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has a right to expect of an employee, or negligence indicating an intentional disregard of the employer's interest or of the employee's duties and obligations to the employer."

See *Boynton Cab Co. v. Neubeck,* 237 Wis. 249, 296 N. W. 636 (1941); 48 Am. Jur. *Social Security, Unemployment Insurance, Etc.,* § 38.

Ordinarily a single instance of misconduct would not bring an employee within the disqualifying terms of § 5 (b), *supra.* The important element to be considered is the nature of the misconduct and how seriously it affects the claimant's employment or the employee's rights. Obviously no hard and fast rule can be made to cover such a situation. *American Bag & P. Co. v. Unemployment Comp. Bd. of Rev.,* 184 Pa. Super. 292, 132 A. 2d 765 (1957). We have no difficulty

---

2. The Pennsylvania Unemployment Compensation Statute [43 P. S. § 802 (e)] denies benefits when the discharge is "for wilful misconduct." The term is not used in connection with the words "actual or threatened [and] deliberate" which appear in our statute.

in concluding that the claimant's acts in this instance constituted "deliberate and wilfull" misconduct within the meaning of the statute. Such conduct evinced an utter disregard of the employee's duties and obligations to his employer, and was calculated to disrupt the discipline and order requisite to the proper management and control of a large food processing company which had given him employment as a supervisor over other employees working for the same company. Cf. *Reddick v. State Com'r.*, 213 Md. 195, 131 A. 2d 464 (1957) and 4 McQuillin *Municipal Corporations* (3d ed. 1949) § 12.239, concerning proper reasons for the removal and discharge of state and municipal employees.

### (ii). Connection With Work.

The difficult question to decide is whether the claimant's deliberate and willful misconduct was "connected with his work." We have been referred to no decision directly in point, and we know of none. Moreover, there is a paucity of articles in the law journals, legal texts and other publications bearing on the meaning of the term.

We think we may assume that the legislature did not intend to limit misconduct "connected with" the employee's work to misconduct which occurred during the hours of employment and on the employer's premises. If it had, the language used would have undoubtedly expressed that intent. Since no such limitation was indicated, it is obvious the provisions of the statute were intended to deny unemployment compensation to a claimant who was discharged—and hence unemployed—because of misconduct regardless of when or where it occurred so long as such misconduct was in law *connected* with the employee's work.

Sanders *op. cit. supra* at p. 336 [8 Vand. Law Rev. 207] says:

> "The 'connected with the work' aspect of misconduct normally results in disregard of the employee's conduct away from the working premises or while he is not in the course of his employment even though he is discharged for such conduct. However, it is recognized that the interests of the employer may

nevertheless be adversely affected by such conduct
* * *."

The law writers generally agree that a breach of duty to the employer, although not in itself sufficient, is an essential element to make the act one connected with the work. One of them states:

> "The standard to be applied is that of the employment contract, express or implied, which fixes the worker's duties in connection with his work. Since conduct can be wrong only when it violates a duty to act otherwise, benefit decisions have held that an essential element of misconduct connected with the work is a breach of duty to the employer. * * * Circumstances to be considered are whether the act occurred during the hours of employment, * * * on the employer's premises, * * * while the employee was engaged in his work, and *whether the employee took advantage of the employment relation in order to commit the act."* (Emphasis added.) Kempfer *Disqualifications for Voluntary Leaving and Misconduct* 55 Yale L. J. 147, 163 (1945).

In a case such as this—where the claimant gained access to the company's plant by abusing a privilege he enjoyed as a responsible employee in a supervisory capacity—where his use of the truck he took was unauthorized—where he operated the truck without an operator's license, caused it to be involved in an accident, left the scene without identifying himself, and failed to report the accident for more than two days—we think the claimant's improper conduct constituted deliberate and willful misconduct "connected with his work" within the meaning of the statute. Obviously the employee took advantage of the employment relation when he took the truck and used it for his own purposes without authority. Such conduct demonstrated a lack of regard for his duties and obligations to his employer. And, of more concern to the employer, the misconduct was such as to adversely affect the

212

employee's suitability to continue as a supervisor in the plant
of his employer.

> *Order reversed and case remanded*
> *for the entry of an order in con-*
> *formity with this opinion, the ap-*
> *pellee to pay the costs.*