L.R. AMES, G.L. Dellaert, J.J. Jagielski, E.R. Lewis, R.H. Peters, L.M. Powers, J.J. Slinginger, D.L. Van Erem, F.E. Whittemore, and F.P. Goedken, Appellants,

v.

EMPLOYMENT APPEAL BOARD, Appellee,

and

John Deere & Company, Employer.

Lynn ARTHUR, Richard Bechthold, Donald Betts, John Boesen, Michael Caballero, Sharron Chapman, John Ertl, John Flaig, Craig Frush, Dennis Frush, Thomas Hebron, Earl Hintzman, Paul James, Donald Jasper, John Kincaid, William LeCompte, Herman Lemon, James Lemon, Randall Machholz, Kevin McBride, Michael McGeough, Myron Nagle, Lawrence Niemeyer, Ralph Peachee, Garnet Philo, Donald Pint, Byron Redenius, Clarence Ronemous, Ronald Smith, Harold Voelschow, Richard Whitmer, Ivan Averhoff, Dean Boyce, David Henry, Marlin Johnson, James Kemp, Ferdinan Klenzman, Jose Ledesma, Ralph Madsen, Charles Ruhlmann, Brian Smith, and Thomas VanEe, Appellants,

v.

EMPLOYMENT APPEAL BOARD, Appellee,

and

John Deere & Company, Employer.

No. 88-273.

Supreme Court of Iowa.

April 19, 1989.

Matthew Glasson of Glasson, Grove & Sole, Cedar Rapids, for appellants.

Greg A. Naylor and Mary L. Bricker of Nyemaster, Goode, McLaughlin, Emery & O'Brien, P.C., Des Moines, for employer appellees.

W.C. Whitten, Des Moines, for appellee Employment Appeal Bd.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, CARTER, and SNELL, JJ.

CARTER, Justice.

Members of the nonstriking Pattern Workers Union who allege they were prevented from reporting to work at Deere & Company plants in Waterloo and Dubuque

by picketing strikers from the United Auto Workers Union challenge denial of unemployment benefits. The district court affirmed the Employment Appeal Board's order which determined that the claimants were disqualified under the "voluntary quit" provision of Iowa Code section 96.5(1) (1985). Upon consideration of the arguments of the parties, we affirm the denial of benefits for the claimants working at the Dubuque plant and reverse the denial of benefits for the claimants working at the Waterloo plant.

This appeal involves the consolidated appeals from two cases from the District Court for Black Hawk County which originated as actions for judicial review of decisions by the Employment Appeal Board rejecting claims for unemployment benefits. The actions are *Arthur v. Employment Appeal Board and John Deere & Co.*, No. 69049, and *Ames v. Employment Appeal Board and John Deere & Co.*, No. 69397. The appeals present the issue whether nonstriking employees who are prevented from reporting to work by the picket line of a nonrelated labor organization are entitled to unemployment benefits.

### I. *Facts and Proceedings Below.*

L.R. Ames and nine other claimants (hereinafter the Dubuque claimants) are employed as pattern makers at John Deere & Co. in Dubuque, Iowa. L.A. Arthur and forty-one other claimants (hereinafter the Waterloo claimants) are employed by Deere & Co. as pattern makers at two locations in the Waterloo area known as the Foundry and the Product Engineering Center. They all are members of a labor organization know as the Pattern Makers League of North America, which has a collective bargaining agreement with John Deere & Co. The Pattern Makers League represents Deere employees who build and maintain equipment used to make castings.

The majority of the production workers at Deere & Co. in both Dubuque and Waterloo are represented by the United Auto Workers (UAW). The UAW members constitute a separate bargaining unit from members of the Pattern Makers League,

and each organization has a separate contract with Deere & Co. In August 1986, contract negotiations between Deere & Co. and the UAW over wages and working conditions broke down. At all times pertinent to these appeals, the Pattern Makers League had no labor dispute with Deere & Co.

A. *Incidents at Dubuque.* On Saturday, August 23, 1986, members of UAW Local 94 began daily picketing of entrances to Deere & Co. in Dubuque. The Dubuque claimants allege that they, led by shop captain Ed Lewis, attempted to cross the picket line on Monday, August 25, 1986. They allege that UAW pickets physically blocked the entrance and refused to let them through. They contend they were "concerned about the potential for violence and were reluctant to cross the picket lines without permission from UAW Local 94." After the August 25 incident, the Dubuque claimants made no further attempt to cross the UAW picket line.

A few weeks later, the UAW rescinded its request that the pattern makers not cross the picket line, and on the following Monday, September 15, 1986, the Dubuque claimants did cross the line without incident and resume employment.

B. *Decision of the agency as to Dubuque claimants.* A deputy claims officer denied the claimants' applications for benefits. On November 14, 1986, a hearing on the Dubuque claimants' benefits was held before a job service hearing officer in Dubuque.

Deere & Co. argued that the claimants had voluntarily quit without good cause attributable to the employer. It asserted that employment was available to the claimants on August 25 despite the UAW strike and remained available throughout their absence. It further alleged that the picketers "merely asked them to leave," and that no physical confrontations occurred between the claimants and the picketers. Deere contended that the claimants and the picketers were friends and that the claimants' refusal to cross the lines was motivated by sympathy, not by fear for their personal safety.

On December 9, 1986, the hearing officer affirmed the decision of the claims deputy. The hearing officer found that evidence showed the claimants' failure to cross the picket line was a direct result of threats to their personal safety by UAW members. He further found that the threats were real and not imagined, and that had the claimants made an effort to cross the picket line they would have suffered personal harm. Based on the Iowa Supreme Court's decision in *Deere Manufacturing Co. v. Iowa Employment Security Commission*, 249 Iowa 1066, 90 N.W.2d 750 (1958), the hearing officer held the claimants did not leave for a cause which could be attributed to the employer and denied their claim for benefits.

The Dubuque claimants filed an appeal with the Employment Appeal Board. On May 8, 1987, the board upheld the decision of the hearing officer but modified his findings of fact. The board found that the claimants had not met with any actual threats of violence, and had honored the picket line only on the speculation that harm could occur. One of the three board members concurred in result only and would have affirmed the findings of the hearing officer without modification.

C. *Incidents at Waterloo sites.* On Saturday, August 23, 1986, the same date as in Dubuque, members of UAW Local 838 established picket lines at all entrances to the Foundry in Waterloo. According to the testimony of Richard Mayer, a Deere supervisor of wage employment and benefits, the pickets at the Foundry carried signs indicating they were on strike. He also testified that after the UAW announced it would strike at the Foundry, Deere & Co. instituted a defensive lockout of UAW workers at the Product Engineering Center. The lockout began with the third shift on Sunday night, August 24. Salaried employees took over some of the production work at the Foundry.

The Waterloo claimants who work at the Foundry allege they attempted to report for work on August 25, 1986, and were prevented from doing so by verbal abuse and threats of physical violence by the pickets. James Hines, business manager for the Pattern Makers League, testified that he approached the lines accompanied by shop captains at 6:30 a.m., and asked to cross the line. He testified the response was that if he crossed he would receive a broken leg.

At the time of the hearing on November 13, 1986, the claimants working at the Foundry had not returned to work. James Hines testified that the last attempt to speak to the UAW about crossing had been made on October 2. On that date, he spoke to Donald Page, president of Local 838, who responded with a written statement that the UAW could not keep them from crossing the line, but could not guarantee their safety if they made an attempt.

The UAW did not initially impose a strike at the Product Engineering Center in Waterloo. After the strike at the Foundry, Deere & Co. initiated a lockout of all UAW members at all units. On Tuesday, August 26, 1986, a UAW picket line was established across the street from the Product Engineering Center. According to Richard Mayer, the pickets carried signs indicating they were locked out. Salaried employees took over some of the production work.

The Waterloo claimants who worked at the Product Engineering Center continued to work through Wednesday, August 27, 1986. On that date, while the pattern makers were at work, the UAW picket line moved across the street and onto company property to picket the entrance drive to the Product Engineering Center. The claimants allege that when they arrived for work on Thursday, August 28, they met with verbal abuse from the picketers, were physically barred from crossing the picket line, and were unable to report for work.

The employer concedes there was some evidence of verbal abuse by the picketers but asserts no instances of actual violence occurred at either location. Mayer testified that, although the UAW members were locked out, the company made no attempt to turn away members of the Pattern Makers League from performing work.

According to James Hines, prior to the onset of the picket lines, Deere & Co. discussed the possibility of a future dispute with the UAW, and asked the pattern makers both before and after the strike to cross picket lines and report for work only if they could do so without injury. Richard Mayer testified that, shortly after the picketing began, Deere & Co. representatives met with members of the Pattern Makers League and told them work was available and that they were expected to cross the picket lines and report to work. Both Hines and Mayer testified that, at the meeting, the pattern makers asked the company to seek an injunction on their behalf so that they could attend work. Mayer stated the company refused the request because it did not believe it could get an injunction under the circumstances. Hines stated the claimants also asked the company to establish a separate gate for them to pass through to get to work. Hines testified the only response from company officials to both requests was that it was the pattern makers' responsibility to get in to work.

The claimants allege that representatives of the Pattern Makers League met with UAW officials on August 25, August 27, September 18, and October 12, and were unable to get permission from the UAW to cross the picket lines. Thomas VanEe, shop captain for the pattern makers at the Product Engineering Center, testified that on the 18th or 19th of September he and other representatives of the pattern makers approached the picket line again because of company statements that they were not trying hard enough to get in to work. He testified they were turned away again by threats of physical harm by UAW pickets.

VanEe testified they subsequently informed UAW officials that the company was threatening to discontinue insurance payments unless they went to work. On October 13, 1986, he testified, they approached the picket line at the Product Engineering Center, and the pickets moved out of the way. The claimants crossed the line and returned to work on that date. The crossing caused no violent or harmful

incidents, although on several subsequent occasions nails appeared in the streets. VanEe testified that after the pattern makers returned to work, the UAW maintained picket lines only at the exit drive from the Product Engineering Center when the claimants got to work, and at the entrance when they left work. Thus, at the time of the hearing, workers at the Product Engineering Center did not have to cross the lines at any time after October 13.

Mayer testified at the hearing that, as a result of their failure to report to work during the picketing, Deere & Co. unilaterally discontinued payment of health, accident, and life insurance premiums for the period the pattern makers did not attend work, effective October 1. When the claimants working at the Product Engineering Center returned to work, the company resumed paying the insurance premiums.

D. *Decision of the agency as to Waterloo claimants.* A hearing on the Waterloo claimants' entitlement to benefits was held on November 13, 1986, in Waterloo. On December 9, 1986, the hearing officer affirmed the decision of the claims deputy denying benefits. He held that the evidence established the claimants would have suffered personal injury if they had crossed the picket line at the Foundry on August 25. He found that the pattern makers had refused to cross the picket lines at both Waterloo locations out of concern for their personal safety. The hearing officer concluded that, although the claimants' unemployment was involuntary, under *Deere Manufacturing Co.,* 249 Iowa at 1077, 90 N.W.2d at 757, it was not for a cause attributable to the employer. On appeal, the Employment Appeal Board adopted the findings and conclusions of the hearing officer as the final decision of the agency. One board member filed a dissenting opinion. He asserted that the unemployment compensation statute has been changed since the time *Deere Manufacturing Co.* was decided so that the burden to prove disqualification rests upon the employer. Applying that burden, he argued, the board should have found that the com-

pany's refusal to arrange a special entrance, apply for an injunction, or take any other steps to protect the pattern makers was cause attributable to the employer for the claimants' inability to work.

E. *Decision on judicial review.* The Dubuque claimants filed an application for judicial review in Dubuque County. The Waterloo claimants filed for judicial review in Black Hawk County. By agreement of the parties, the Dubuque action was transferred to Black Hawk County and was heard and decided by that court together with the Waterloo claims. The two appeals have been consolidated in this court.

By decision filed January 22, 1988, the District Court for Black Hawk County upheld both board decisions, finding the issues were completely controlled by the supreme court's holding in *Deere Manufacturing Co.* It rejected the claimants' contention that the *Deere Manufacturing Co.* decision should be overruled.

## II. *Issues on Appeal.*

Claimants at both the Waterloo and Dubuque plants contend that the Employment Appeal Board committed errors of law which should have been corrected by the district court pursuant to Iowa Code section 17A.19(8)(e) (1985). Because the factual basis for these legal arguments differs between the two groups of claimants, we separately consider the contentions of each group.

A. *Waterloo claimants.* As their first argument, the Waterloo claimants urge this court to overrule its decision in the *Deere Manufacturing Co.* case. They urge that the *Deere Manufacturing Co.* rationale was erroneous because it appeared without dispute that the claimants in that case were prevented from working by forces over which they had no control.

These claimants urge that under a proper interpretation of section 96.5(1) the issue of "good cause attributable to the employer," relied upon in the *Deere Manufacturing Co.* case to support denial of benefits, can only be considered if the claimants' absence from work was voluntary. Claimants also contend that, if the court continues to require cause attributable to the employer as a condition for not invoking the section 96.5(1) disqualification in both voluntary and involuntary settings then, such cause may be found in the failure of Deere & Co. to adequately assist them in gaining safe entry to the plant.

In response to the claimants' contentions, the agency and the employer contend that the factual situation which existed at the Waterloo sites is on all fours with the *Deere Manufacturing Co.* case. Based on this premise, they urge the holding of that case requires affirmance of the agency and the district court. The agency and the employer disagree with claimants' contention that the circumstances which precluded these employees from reporting for work were in any manner attributable to the employer.

The statutory language relied upon by the agency in denying benefits to these claimants reads as follows:

An individual shall be disqualified for benefits:

1. ... If [he or she] has left [his or her] work voluntarily without good cause attributable to [his or her] employer, if so found by the department.

Iowa Code § 96.5(1) (1985). Except for gender balancing amendments, the same statute was in force at the time the *Deere Manufacturing Co.* case was decided. We agree with the arguments of the agency and the employer that, unless the reasoning of the *Deere Manufacturing Co.* case is totally rejected, the decision of the agency and district court must be affirmed.

The court in *Deere Manufacturing Co.* indicated that the claimants in that case had established the involuntary nature of their absence from work. Notwithstanding this circumstance, the court determined that the controlling issue was "whether such involuntary leaving was attributable to the employer." 249 Iowa at 1077, 90 N.W.2d at 757. Upon a careful reexamination of that question, we now believe that the conclusion reached in the *Deere Manufacturing Co.* case was a misapplica-

tion of the "voluntary quit" provisions contained in section 96.5(1).

The section 96.5(1) disqualification is expressly couched in terms of "voluntary" leaving. The words "attributable to the employer," which appear in this statute, serve to identify those instances in which a claimant voluntarily absent from employment may nevertheless avoid disqualification from benefits. If the facts show, as they did in the *Deere Manufacturing Co.* case, that the employee was absent involuntarily, then, under a proper interpretation of the statute, the words "attributable to the employer" simply have no application.

Several courts from other jurisdictions considering similar fact patterns have recognized under like statutes that refusal to cross a hostile picket line may constitute an involuntary separation from employment which does not disqualify a claimant from unemployment compensation. *Ex parte McCleney*, 286 Ala. 288, 239 So.2d 311 (1970); *Shell Oil Co. v. Cummins*, 7 Ill.2d 329, 131 N.E.2d 64 (1955); *Achenbach v. Review Bd.*, 242 Ind. 655, 179 N.E.2d 873 (1962); *Steamship Trade Ass'n v. Maryland Unemployment Compensation Bd.*, 190 Md. 215, 57 A.2d 818 (1948); *Kalamazoo Tank & Silo Co. v. Unemployment Compensation Comm'n*, 324 Mich. 101, 36 N.W.2d 226 (1949); *Blankenship v. Board of Review*, 486 P.2d 718 (Okla.1971); *Texas Co. v. Texas Employment Comm'n*, 261 S.W.2d 178 (Tex.Civ.App.1953); *Lexes v. Industrial Comm'n*, 121 Utah 551, 243 P.2d 964 (1952).

We can find no policy underlying the Iowa Employment Security Law which supports the *Deere Manufacturing Co.* decision in so closely tying the awarding of benefits to absence of cause attributable to the employer. The guide to interpretation contained in Iowa Code section 96.2 indicates that the primary purpose of the act is "the compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed through no fault of their own." No reference is made in this statement of purpose to fault attributable to the employers.

Another indication that the emphasis on cause attributable to the employer in the *Deere Manufacturing Co.* decision was misplaced is found in the many instances where, under the act, in voluntary quitting situations, benefits are permitted notwithstanding the fact that the absence from work is not attributable to the employer. These situations include voluntary leaving to seek better employment, layoffs due to economic circumstances, leaving employment to care for family members, and absences due to illness, injury or pregnancy. *See* Iowa Code § 96.5(1)(a)-(d).

In addition to the examples found in the statute itself, this court has recognized as a general proposition that it is not necessary to show employer fault in order to defeat the application of the "voluntary quit" disqualification. *See, e.g., Dehmel v. Employment Appeal Bd.*, 433 N.W.2d 700, 702 (Iowa 1988); *Raffety v. Iowa Employment Sec. Comm'n*, 247 Iowa 896, 899–900, 76 N.W.2d 787, 789 (1956). If benefits are payable to employees who voluntarily leave without cause attributable to the employer, then it hardly appears to be a policy of the act to require employer cause in situations involving involuntary terminations. The opinion in the *Deere Manufacturing Co.* case was incorrect in suggesting the contrary, and that decision is now overruled.

The agency and the employer attempt to reargue the facts as found by the Employment Appeal Board in order to establish that conditions did not prevent these claimants from safely entering the plant sites. Because these parties did not seek judicial review of the agency's final decision, they may not now urge that the facts are other than reflected in the appeal board's findings. Based on these findings, the "voluntary quit" disqualification may not be applied to the Waterloo claimants based on a correct interpretation of section 96.5(1).

The district court's decision was based on the incorrect interpretation of that statute in the *Deere Manufacturing Co.* case. Although the district court's decision was true to principles of *stare decisis*, it must

be reversed based upon our present holding.

B. *Dubuque claimants.* The Dubuque claimants make the same arguments as the Waterloo claimants and, in addition, urge that the agency's finding that those claimants had not met with any actual threats of violence, and had honored the picket line only on the speculation that harm might occur should be overturned. The agency and the employer urge that the agency's finding that claimants had failed to sufficiently establish a threat to their safety is supported by substantial evidence in the record. They urge that this finding of fact is dispositive of the Dubuque claims irrespective of whether the *Deere Manufacturing Co.* decision continues to be followed. Based on our review of the entire record, we agree with the contentions of the agency and the employer. Notwithstanding our holding in the prior division of this opinion, there is a sound factual basis for upholding denial of the Dubuque claims.

We have considered all issues presented and the arguments made by the parties. The judgment of the district court on the Dubuque claims (*Ames v. Employment Appeal Board* (No. 69397)) is affirmed. The judgment of the district court on the Waterloo claims (*Arthur v. Employment Appeal Board* (No. 69049)) is reversed, and that action is remanded to the agency for further proceedings not inconsistent with our opinion. The costs on appeal shall be assessed thirty percent to the *Ames* claimants and seventy percent to the appellees.

AFFIRMED IN PART, REVERSED IN PART.