MERRITT L. FARRAR *vs.* DIRECTOR OF THE DIVISION OF EMPLOYMENT SECURITY.

Middlesex. February 8, 1949. — March 7, 1949.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Employment Security. Words,* "Available for work."

Upon an appeal under G. L. (Ter. Ed.) c. 151A, § 42, as appearing in St. 1943, c. 534, § 6, and as amended by St. 1947, c. 434, from a decision by a District Court in review of a decision by the board of review in the division of employment security, this court deals only with questions of law, including the question whether the findings of the board were "supported by any evidence."

Statement by RONAN, J., of principles applicable in determining whether an employee is "available for work" within G. L. (Ter. Ed.) c. 151A, § 24, as appearing in St. 1941, c. 685, § 1.

No error of law appeared in a conclusion by the board of review in the division of employment security that a boss carder who had been out of work about six months had failed to prove himself "available for work" within G. L. (Ter. Ed.) c. 151A, § 24, as appearing in St. 1941, c. 685, § 1, and therefore was not entitled to further benefits, where the record showed that he had not actively sought employment at any mill but had waited for some mill owner to communicate with him; that he had restricted the territory in which he was willing to work to one where there were no jobs as boss carder available; and that whether he would accept any kind of work other than as boss carder was left in doubt by an evasive answer in his application for benefits, by a stated condition as to the amount of pay for any job he would accept, and by his testimony that he would not accept employment as a card stripper.

PETITION, filed in the District Court of Newton on October 28, 1947, for review of a decision by the board of review in the division of employment security.

The case was heard by *Nagle,* J., from whose decision the respondent appealed to this court.

*F. E. Kelly*, Attorney General, *H. P. Fielding*, Assistant Attorney General, *& J. A. Brennan*, for the respondent, submitted a brief.

No argument nor brief for the petitioner.

RONAN, J. The claimant, a boss carder at a woolen mill in Newton, became separated from his employment when the mill was destroyed by fire on October 3, 1946. He received unemployment benefits until on or about April 1, 1947, when said benefits based on the claimant's earnings during the year 1945 were exhausted. He filed a new benefit year claim on April 8, 1947, based upon his earnings in 1946. This claim was accompanied by a written statement of facts, signed by the claimant, which disclosed that he had not applied at any mill for work as a boss carder as that would be "a violation of ethics" for the reason that it would appear that he was endeavoring to take the job away from the one who had it; that he was continually in touch with salesmen and other mill men, to ascertain whether there was any vacancy as a boss carder; that he would accept other employment but did not know just what type of work would be suitable; and that he refused to accept work in Auburn, New York, as that was too far away. On his written claim for benefits, it appeared that in answer to a direction to give the names and addresses of the last three employers from whom he sought employment he stated, "Various salesmen and mill men." He also stated that he would accept a job which paid $65 for a five day week. In reply to the question whether he would accept any work other than as a boss carder he answered, "Yes & No." The director refused to approve the claim on the ground that the claimant was not available for work and had not established his availability for work because of his failure actively to seek employment. Upon appeal to the board of review, the claim was heard by an examiner. The claimant testified that a boss carder does not have to apply to a mill for a job; that if a mill needs a carder, it communicates with him; that before he worked at the Newton mill he had been a carder at another mill on three different occasions; that

he had never requested employment as the mill sent for him and hired him; that he could not take a job as a card stripper as that "would ruin" him because, if it became known that he had worked as a stripper, he would never be given a position where he would be placed in charge of employees; that he could not go out and look for a job as a boss carder; that the mill always advertised for one; that he lived in Newton and would not work at any place beyond bus transportation from his home; that there was no boss carder job open; that "it would be a miracle if there was"; and that all the mills were shut down. The examiner decided that the claimant in order to be eligible for benefits must be actively in the labor market, seeking employment on his own initiative; and that there was not sufficient evidence that the claimant made any such efforts to secure employment. He affirmed the decision of the director and denied benefits. His decision was adopted by the board of review. The claimant filed a petition for review in a District Court. The judge found "that on the basis of the record and findings" the claimant was entitled to benefits. Nearly three months afterwards, the judge modified this finding by striking out the word "that" in the above quotation and substituting therefor the words "as a matter of law." The director appealed to this court.

The applicable provision of the employment security law, G. L. (Ter. Ed.) c. 151A, as appearing in § 1 of c. 685 of St. 1941, is contained in § 24, which, in so far as material, provides that "An individual, in order to be eligible for benefits under this chapter, shall . . . (b) Be capable of and available for work and unable to obtain work in his usual occupation or any other occupation for which he is reasonably fitted . . . ." The question presented is whether the claimant was "available for work" during the period for which he sought the payment of benefits. These words have not been defined by the said chapter. In so far as the determination of this question is one of fact, our duty is to examine the record and to determine whether there is

an evidentiary basis for this finding and, if there is, the finding must stand as findings of the board are conclusive "if supported by any evidence." G. L. (Ter. Ed.) c. 151A, § 42, as appearing in St. 1943, c. 534, § 6, as amended by St. 1947, c. 434. We can deal only with questions of law on this appeal. *Pacific Mills* v. *Director of the Division of Employment Security*, 322 Mass. 345, 346. *Rivers* v. *Director of the Division of Employment Security*, 323 Mass. 339.

The design of our employment security law "is to afford relief to those who have been employed in the selected kinds, of business since the effective date of that law when they are thrown out of work through no fault of their own." *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275, 282. Relief is furnished by a system of benefits payable in certain amounts for designated periods to employees who are unemployed through no fault of their own and who have complied with prescribed conditions required to become eligible to receive the benefits. The employee must be able and available for work and ready and willing to obtain suitable employment. He must act in good faith and make a reasonable effort to secure such employment of a kind which he is qualified by experience and training to perform. He cannot withdraw from the labor market but must remain in that market seeking employment in order to remain eligible for benefits. That means more than waiting for a job to seek him out. Benefits are never to be considered as inducements for idleness. On the other hand, benefits are not to be denied simply because an employee has not become reëmployed. To do so would thwart the beneficent purpose of the law to furnish something by way of reimbursement to a limited extent to one who has sustained a loss of wages because of the inability of industry to furnish steady employment. Reasonable opportunity to secure employment diminishes with the wane of industrial production. One is not to be deprived of benefits if he is compelled to remain idle simply because there are not enough jobs for all those who are

able, ready and willing to work. The mental attitude of the employee must also be considered. Where the condition of the labor market is such as to afford him a fair opportunity to choose between going to work and remaining idle, he is bound by his choice. Of course, one may independently of the employment compensation law seek such work as he desires to perform or he may refuse to accept any employment at all for reasons deemed by him to be sufficient, but when he becomes an applicant for unemployment benefits he must comply with the provisions of the law in order to be entitled to receive payments of benefits. One practical test for availability for work is the action of the employee in accepting or refusing a job that comes within the provisions of the employment security law as a suitable job. The employee cannot without good cause refuse to accept suitable employment and claim benefit payments, but his right to the payment of benefits is unaffected by his refusal when the work offered is unsuitable in the light of all the existing circumstances. *Pacific Mills* v. *Director of the Division of Employment Security,* 322 Mass. 345, 350. We have referred to various matters that should be considered in deciding whether an employee is available for work. The question has not been decided in this Commonwealth but it has been settled in numerous other jurisdictions in accordance with the principles we have discussed.[1]

---

[1] *Department of Industrial Relations* v. *Tomlinson,* 251 Ala. 144. *Loew's Inc.* v. *California Employment Stabilization Commission,* 76 Cal. App. (2d) 231. *Bigger* v. *Unemployment Compensation Commission,* 43 Del. 274; affirmed 43 Del. 553. *Claim of Jackson,* 68 Idaho, 360. *Ford Motor Co.* v. *Unemployment Compensation Commission,* 316 Mich. 468. *Dwyer* v. *Unemployment Compensation Commission,* 321 Mich. 178. *Haynes* v. *Unemployment Compensation Commission,* 353 Mo. 540. *Wagner* v. *Unemployment Compensation Commission,* 355 Mo. 805. *Hunter* v. *Miller,* 148 Neb. 402. *Hallahan* v. *Riley,* 94 N. H. 48. *Muraski* v. *Board of Review of the Unemployment Compensation Commission,* 136 N. J. L. 472. *Bergen Point Iron Works* v. *Board of Review of the Unemployment Compensation Commission,* 136 N. J. L. 645. *Matter of Heater,* 270 App. Div. (N. Y.) 311. *Canton Malleable Iron Co.* v. *Green,* 75 Ohio App. 526. *Copeland* v. *Oklahoma Employment Security Commission,* 197 Okla. 429. *Barclay White Co.* v. *Unemployment Compensation Board of Review,* 356 Pa. 43. *Judson Mills* v. *South Carolina Unemployment Compensation Commission,* 204 S. C. 37. *Jacobs* v. *Office of Unemployment Compensation & Placement,* 27 Wash. (2d) 641.

Farrar *v.* Director of the Division of Employment Security.

In the case at bar, it is perfectly understandable that the claimant should desire a job as a boss carder, but it is plain that, when he filed his application for further benefits six months after he had ceased to be employed, he had no good prospects of securing such a job within a reasonable time. The board was not informed of any definite efforts he made with any particular persons to secure such a job. He never applied for work during this six months' period. The board was apparently not impressed with his explanation for failing to seek employment as a card stripper, or in restricting his job area to a territory limited by bus transportation from his home, a district within which, according to his testimony, there was no opportunity for the kind of work he desired. His answers on the application as to whether he would accept employment other than as a boss carder were evasive and might well have left the board in doubt as to what work he would accept, especially in view of his further restriction that the job should pay $65 for a five day week. According to his own testimony the job he wanted did not exist, and he practically withdrew from the labor market and seems to have remained content to wait until some mill owner offered him a job as a boss carder. Whether one is available for work depends upon the various circumstances presented in different cases. No hard and fast rule can be promulgated for general application. The determination of the question rests largely in the domain of fact with the burden upon the claimant to show that the continuance of his unemployment was not due to his own fault. The board was not satisfied from his written statements and his testimony that it was not. The conclusion of the board cannot be said to be wrong as to matters of fact. Neither can it be said that its conclusion was vitiated by an error of law. *Pacific Mills* v. *Director of the Division of Employment Security*, 322 Mass. 345. *Rivers* v. *Director of the Division of Employment Security*, 323 Mass. 339.

A finding different from that adopted by the board was not required by law, and the judge of the District Court was in error in making a different finding in his first decision and

in ruling as he attempted to do in his modified decision[1] that the claimant was entitled to the payment of benefits. *Wagstaff* v. *Director of the Division of Employment Security,* 322 Mass. 664, 667.

The decision of the District Court is reversed and instead a decision is to be entered adjudging the claim to be invalid.

*So ordered.*

---

[1] As the result we reach would be the same whether or not the judge had the power to change his decision after an appeal had been taken and nearly three months after the first decision was made, we need not decide the question.   See *Waucantuck Mills* v. *Magee Carpet Co.* 225 Mass. 31; *Amory* v. *Assessors of Boston,* 309 Mass. 162, 163.