## BARLEY *v.* MARYLAND DEPARTMENT OF EMPLOYMENT SECURITY

[No. 74, September Term, 1965.]

*Decided March 30, 1966.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, BARNES and McWILLIAMS, JJ.

*James J. Lombardi,* with whom was *Edward T. Conroy* on the brief, for appellant.

*James N. Phillips, General Counsel, Maryland Department of Employment Security,* with whom were *Thomas B. Finan, Attorney General, Bernard S. Melnicove, Special Assistant Attorney General,* and *Peter Skefas, Assistant General Counsel, Maryland Department of Employment Security,* on the brief, for appellee.

BARNES, J., delivered the opinion of the Court.

The Referee of the Maryland Department of Employment Security (the Department) decided on September 16, 1964 that the appellant, Laura E. Barley (the claimant) was available

for work and had not applied for or accepted suitable work. He denied the claimant unemployment benefits from July 10, 1964 until the claimant became reemployed and earned at least ten times her weekly benefit amount of $38.00. The Department's Board of Appeals (the Board) on October 7, 1964 affirmed the Referee's decision and on December 11, 1964, the Circuit Court for Prince George's County (Bowie, J.) affirmed the decision of the Board. This appeal is from Judge Bowie's order.

The claimant, a 54 year old woman was employed by ACF Electronics (ACF) as a wireman or solderer for 13 years prior to her separation from employment by ACF for an indefinite period on April 3, 1964. At that time she had 13 years of union seniority by virtue of which she was entitled to recall under the union contract. At the time of her lay off, her wage rate was $2.68 an hour. She filed a claim with the Department for unemployment benefits on April 5, 1964, was classified as a solderer, and was awarded $38.00 a week for 13 weeks until July 10, 1964, the date of her disqualification.

The claimant was sent to the Department's Employment Service Office on July 10, 1964 to discuss a potential job at the Johns Hopkins Physics Laboratory, Consultants & Designers Department (C & D Laboratories). The wage rate at C & D Laboratories for wiring, assembling and welding training was $1.95 an hour. The wage scale began at a minimum of $1.75 with a maximum of $3.25 an hour.

The claim specialist's report, constituting a statement made and signed by the claimant on July 14, 1964, states in pertinent part as follows:

> "I told the employer that interviewed me last Friday that I was waiting recall from my former employer. I spoke with personnel at A.C.F. Electronics and they said I was third on the list. They expect to call me by the end of the month. I was also asked what salary I had been receiving. I said $2.68 per hour and when I returned I would receive $2.75 per hour. I was told he could not match my salary that I had been receiving."

At the hearing before the Board's Referee, the Referee asked

the claimant if this statement "was the gist of what you were talking about?" to which the claimant replied: "Well, generalizing it, yes. Not word for word." She stated that she did not remember the conversation "word for word", but gave the following testimony before the Referee in regard to her recollection of the conversation with the representative of C & D Laboratories:

> "He looked at my file and he said, 'oh, another ACF,' and I said, 'yes,' and he said 'I see you are subject to recall.' I said, 'yes, I am,' he said 'when will you go back?' I said, 'when, if and when I'm called, because I have seniority there, I hate to lose.' So he said * * * 'what were your wages at ACF' and I told him what they were and what they would be when I went back."

The "Statement of the Employer" states "would have hired her, had she not been awaiting recall."

As we have indicated the Referee denied the claim, the Board and later the Circuit Court affirmed the denial of claim. We have concluded that the order of the Circuit Court should be affirmed.

The Unemployment Insurance Law appears in Code (1964 Cum. Supp.) Article 95A, §§1 to 23. By Section 7(h) the scope of judicial review on the facts is substantially limited as Section 7(h) provides in part as follows:

> "In any judicial proceeding under this section, the findings of the Board of Appeals as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law."

We have consistently applied this statutory provision. Judge Horney, for the Court, reviewed the prior Maryland cases and stated in *Employment Security Board* v. *LeCates,* 218 Md. 202, 207, 145 A. 2d 840, 843 (1958):

> "In unemployment compensation cases we have consistently held, as the law requires, that the findings of the Board as to the facts are conclusive, if there is

evidence to support such findings. The court's jurisdiction, in such cases, is specifically limited to questions of law. *Mitchell, Inc. v. Md. Emp. Sec. Bd.,* 209 Md. 237, 121 A. 2d 198 (1956); *Md. Emp. Security Bd. v. Poorbaugh,* 195 Md. 197, 72 A. 2d 753 (1950); *Tucker v. American S. & Ref. Co.,* 189 Md. 250, 55 A. 2d 692 (1947); *Brown v. Md. Unemp. Comp. Board,* 189 Md. 233, 55 A. 2d 696 (1947). See also *Franke v. Unemployment Compensation Board of Rev.* 166 Pa. Super. 251, 70 A. 2d 461 (1950). In stating the material facts, the court should state as facts such evidence as is most favorable to the findings of the Board. *Steamship Ass'n v. Unemp. Comp. Bd.,* 190 Md. 215, 57 A. 2d 818 (1948); *Tucker v. American S. & Ref. Co., supra.* Moreover, in reviewing the facts, a court is confined to determining whether there is evidence to support the findings of the Board, and in the absence of fraud, that finding, as stated above, is conclusive."

As there is no fraud alleged or proved, the findings of fact of the Board's Referee, supported by evidence and adopted and affirmed by the Board, are conclusive upon us. The evidence most favorable to these findings of fact is reflected in the original statement by the claimant in the Claim Specialist's Report on Determination, set out above, and this statement indicates that the claimant stated to the representative of the prospective employer that she preferred to wait for recall from her former employer, ACF, and that the potential job was not diligently applied for or accepted by the claimant.

Article 95A, Section 6 sets forth the applicable law in regard to disqualification for benefits. It states in relevant part:

"(d) *Failure to apply for or accept work; determination of suitable work.*—If the Executive Director finds that he failed, without good cause, either to apply for available, suitable work, when so directed by the Executive Director, or to accept suitable work when offered him, or to return to his customary self-employment (if any) when so directed by the Execu-

tive Director. Such disqualification shall be effective from the date when the application for work was to have been made, or when he was notified that suitable work became available to him, or when directed to return to his customary self-employment by the Executive Director, whichever is later, and shall continue for not less than one or more than ten weeks immediately following thereafter or until such individual has become reemployed and has earnings therein equal to at least ten (10) times his weekly benefit amount.

"(1) In determining whether or not any work is suitable for an individual, the Executive Director shall consider the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence.

"(2) Notwithstanding any other provisions of this article, no work shall be deemed suitable and benefits shall not be denied under this article to any otherwise eligible individual for refusing to accept new work under any of the following conditions: (A) If the position offered is vacant due directly to a strike, lockout, or other labor dispute; (B) if the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality; (C) if as a condition of being employed the individual would be required to join a company union or to resign from or refrain from joining any bona fide labor organization."

The determination of the facts in regard to whether or not a claimant has applied for available, suitable work or has accepted suitable work when offered to the claimant is especially within the expertise of the administrative officials administering the Unemployment Insurance Law, involving as it does many subtle considerations and nuances of fact which need

evaluation by those trained to make that evaluation. It would be a rare case indeed, which would justify a court in disturbing that administrative determination, and the case at bar is not one of them. The right of the claimant to wait for recall to her old job at ACF is clear, but she had no right to wait for what was only a hope of reemployment on July 14, 1964,[1] after 13 compensated weeks of unemployment benefits, without being disqualified when she did not diligently apply for or accept suitable work as determined by the administrative officials.

In our opinion, the type of work offered the claimant was "suitable." It was of the same general type of work she was accustomed to perform and indeed offered her training in a new, growing and related field of welding. The lower rate of wages for a person in training for the work of the prospective employer was not shown to be low or disproportionate to the rate for similar work in the community. Then too, the maximum rate for the new work at C & D Laboratories was substantially higher than the hourly rate she was receiving at ACF.

We consider the case of *Lowell v. Maine Employment Security Commission,* 159 Me. 177, 190 A. 2d 271 (1963) to be closely in point with the case before us and we find the opinion of the majority of the Supreme Judicial Court of Maine to be persuasive. In *Lowell* the claimant was a woman, 57 years of age, who had been employed as a repairer in a local shoe manufacturing establishment until she was separated from her employment due to lack of work. She was paid on a piece work basis and received average weekly earnings of between $50 to $55. She filed her initial application for employment security benefits on April 2, 1961 and thereafter filed weekly claims. On May 18, 1961 the claimant was referred to a local shoe shop as a repairer at $1.25 an hour. She discussed the job with the prospective employer and indicated that she wanted to go back to her former employer. The prospective employer would

---

1. The claimant was reemployed by ACF on August 3, 1964, but this prospective reemployment was, of course, unknown to the claimant on July 10, 1964, the time of the interview with the representative of C & D Laboratories. The claimant, herself, stated that she would return to work at ACF "when, if and when I'm called * * *."

not employ the claimant when it was discovered that the claimant would not stay if offered work by her former employer. The Employment Security Act of Maine is quite similar to the Maryland Unemployment Insurance Law. The Maine Employment Security Commission disqualified the claimant from benefits and this action was affirmed, on appeal, by the Superior Court. In affirming the decision of the Superior Court, Chief Justice Williamson, for the Supreme Judicial Court of Maine, stated:

> "There is nothing unusual in the situation here disclosed. The claimant simply did not choose to accept a job as a repairer without making known her intention to leave when a hoped for job at higher pay might become open within a few weeks. Under these conditions the Belgrade Shoe lost interest in the claimant and withdrew its offer of a job.
> "No job is permanent, of course, in an absolute sense. Belgrade Shoe attached no condition to its offer of employment and doubtless would not have been surprised had the claimant given up a job as repairer to return to a former employer at a higher wage. This possibility is quite different from a condition attached to the proposed employment that the claimant presently plans to leave within a few weeks. Understandably the Belgrade Shoe did not wish to employ the claimant under these conditions." (Pages 273-274 of 190 A. 2d).

After indicating that the claimant was "reasonably fitted" to the new job and that the work was "suitable", Chief Justice Williamson, continued:

> "The rate per hour offered by Belgrade Shoe was less the claimant says than she expected to earn at piecework with Clark Shoe. There is no indication that the offered hourly wage was not in line with wages in the industry generally or that it was a depressed wage. The difference in estimated income was not so great as to make the repairer's job at Belgrade Shoe unsuitable for the claimant.

"The claimant had been unemployed since March 24, 1961. The Belgrade Shoe job was refused on May 18, 1961. The hearing of the Appeals Tribunal, whose findings of fact were adopted by the Commission, was held on June 8, 1961. The claimant then had no more than a hope of employment in early July, not with Wood & Smith Shoe Co., her most recent employer, but with a former employer Clark Shoe." (Page 274 of 190 A. 2d).

He then continued:

"The purpose of the Employment Security Act was well stated by Justice Brennan, then of the New Jersey Supreme Court and now of the Supreme Court of the United States in Krauss v. A. & M. Karagheusian, Inc., 100 A. 2d at p. 281:

'The Unemployment Compensation Act provides social insurance, for the common good as well as in the interest of the unemployed individuals, against the distress of involuntary unemployment for those individuals who have ordinarily been workers and would be workers now but for their inability to find suitable jobs. [Cited cases omitted] The provisions for eligibility and disqualification are purposed to preserve the fund for the payment of benefits to those individuals and to protect it against the claims of others who would prefer benefits to suitable jobs. The basic policy of the law is advanced as well when benefits are denied in improper cases as when they are allowed in proper cases.'

"The claimant chose to refuse an offer of suitable work. The Commission so found on credible evidence. The penalty is disqualification for benefits under the Act." (Page 275 of 190 A. 2d).

See also *Farrar v. Director,* 324 Mass. 45, 84 N. E. 2d 540 (1949); *Swanson v. Minneapolis-Honeywell Regulator Co.,* 240 Minn. 449, 61 N. W. 2d 526 (1953); *Goings v. Riley, Commissioner,* 98 N. H. 93, 95 A. 2d 137 (1953); *Weiland v. Un-*

*employment Compensation Board of Review,* 167 Pa. Super. 554, 76 A. 2d 457 (1950) ; *Haug v. Unemployment Compensation Board of Review,* 162 Pa. Super. 1, 56 A. 2d 396 (1948) ; Annotation, *"Availability for work", under unemployment compensation statute, of claimant who undertakes to restrict willingness to work to certain hours, types of work, or conditions, not usual and customary in the occupation, trade or industry,* 25 A.L.R. 2d 1077.

In our opinion the findings of fact by the Referee, adopted and confirmed by the Board, were supported by evidence and, based upon those findings, the Board acted properly in disqualifying the claimant from receiving benefits as set forth in the Referee's decision of September 16, 1964. The lower court properly affirmed the decision of the Board of October 7, 1964 affirming the Referee's decision.

*Order affirmed, the appellant to pay the costs.*