In the Matter of the Claim of THEO SHANLEY, Respondent. MARTIN P. CATHERWOOD, as Industrial Commissioner, Appellant.

Third Department, June 14, 1967.

*Louis J. Lefkowitz, Attorney-General (Samuel A. Hirshowitz, Samuel Stern* and *Irving Jorrisch* of counsel), for appellant.

*Kramer, Wales & Robinson* (*Richard S. Ringwood* of counsel), for respondent.

*Garrell & Garrell* (*Alan B. Wolfer* and *Jules Garrell* of counsel), for Association of Temporary Personnel Contractors, Inc., *amicus curiæ*.

GIBSON, P. J. Appeal is taken by the Industrial Commissioner from a decision of the Unemployment Insurance Appeal Board which reversed a Referee's decision sustaining an initial determination which disqualified claimant from benefits on the ground that she had refused an offer of employment without good cause. (Labor Law, § 593, subd. 2.) In reversing, the board held that claimant was justified in refusing a temporary job in her usual occupation, although at substantially the hourly wage rate "prevailing for similar work in the locality" (Labor Law, § 593, subd. 2, par. [d]), whether upon permanent or temporary employment, because substantial fringe benefits customarily paid or supplied (after three months) for permanent employment in her occupation were not provided for the temporary job offered her. The parties are in substantial agreement as to the facts and the appeal presents only a question of law.

Claimant, a key punch operator, could not return to her employment at the termination of a maternity leave of absence because her employer had meanwhile moved its entire key punch system from the area. Kelly Girl Service, an employment contractor for temporary services, offered her six to eight weeks' employment with another employer as a key punch operator at the prevailing wage, which was at substantially the same rate as that paid in that occupation for permanent and temporary employment alike. Claimant refused the offer, stating her reasons for desiring permanent employment only. As hereinbefore indicated, the board found that the prospective employer would not have provided the usual fringe benefits granted by employers for similar work on a permanent basis, the benefits including free hospital and medical insurance, participation in a retirement plan, paid holidays and accrued vacation credits; and the board thereupon "conclude[d] that the conditions offered to claimant were substantially less favorable to claimant than those prevailing for similar work in the locality." It seems to us important to note that the board later found that these "fringe benefits of a substantial nature are provided to persons employed in similar occupations in the locality *for a period of three months or more*". (Emphasis supplied). It appears elsewhere that fringe benefits are not customarily offered for temporary jobs in claimant's occupation, for reasons that are

obvious and understandable. The board observed that claimant's acceptance of the temporary job would have deferred her commencement of the three-month qualifying period in a permanent job, had one become available; but there is no suggestion that claimant would not, or could not have left the temporary position for a permanent job at any time. Moreover, it is clear, first, that the mere possibility of a permanent opening might not be fulfilled, even within the maximum period for payment of unemployment insurance benefits; and, second, that at least at the time of claimant's refusal of the temporary employment neither the wage rate *nor* the " conditions offered [were] substantially less favorable " (par. [d]) than those obtaining at the outset of a possible permanent employment and for three months thereafter; and to that extent no justification for the refusal existed, within the literal meaning of the statute. Our decision rests also upon the additional and broader ground that the rule enunciated by the board in this case contravenes the basic intendment and the spirit of the Unemployment Insurance Law. Since the enactment of the statute, fringe benefits have so greatly increased in number, nature and diversity and have been extended to so many employments that, in general, they have come to constitute one of the major factors in employer-employee relations and have become of such value as to render the adjectival " fringe " something of a misnomer. As claimant contends, such benefits " are to be considered part of over-all compensation." (*Matter of Asserson [Catherwood]*, 25 A D 2d 895.) We recognize, too, the validity of claimant's additional argument that " the statute makes no distinction between temporary and permanent employment " (*Matter of Lehrman [Corsi]*, 281 App. Div. 936) ; but this cuts both ways and requires that only for a substantial reason may an unemployed claimant refuse temporary employment, even of one day's or one week's duration (*Matter of Walls [Catherwood]*, 26 A D 2d 883; *Matter of Kotlowitz [Catherwood]*, 24 A D 2d 813) or, indeed, refuse a permanent job paying prevailing wages but " less than a job *which is not available* for which claimant's skill might qualify him if such a job were available " (*Matter of Matyevich [Catherwood]*, 15 A D 2d 387, 388). The effect of the board's holding in this case would be to permit a claimant to obtain unemployment insurance benefits despite his refusal of a temporary job, for which he is fitted and which pays the prevailing wage rate, and to permit him to wait indefinitely for a job to become available which shall pay not only the prevailing wage but, after three months, fringe benefits as well, provided, of course, the

claimant's employment shall survive such three-month qualifying period.

The matter of temporary employment poses for this claimant, as doubtless for many others, a manifest problem, and one evoking sympathetic consideration; but it seems rather clear to us that the board's decision does not constitute a proper and authorized solution when we recall the purpose and intent of the unemployment insurance statute. The act was designed to "lighten [the] burden" of "involuntary unemployment" which "so often falls with crushing force upon the unemployed worker and his family". (Labor Law, § 501.) "The primary purpose of the law is to ease the hardship of involuntary unemployment due to economic conditions or other conditions beyond the control of the employee. It was not intended as a substitute for a minimum wage law. * * * It was not intended to regulate wages — it was intended as a substitute for the complete loss of wages forced upon an employee. (Labor Law, §§ 501, 522.)" (*Matter of Sellers* [*J. W. Mays, Inc.-Catherwood*], 13 A D 2d 204, 205–206.)

The decision should be reversed, without costs, and the claim remitted for further proceedings not inconsistent with this opinion.

HERLIHY, REYNOLDS, AULISI and GABRIELLI, JJ., concur.

Decision reversed, without costs, and claim remitted for further proceedings not inconsistent with the opinion herein.