515 A.2d 492

**Harold ADAMS, et al.**

**v.**

**CAMBRIDGE WIRE CLOTH CO., et al.**

**No. 57, Sept. Term, 1986.**

Court of Special Appeals of Maryland.

Oct. 9, 1986.

Peter M. Callegary, Baltimore City, for appellants.

Stuart M. Niemtzow, for amicus curiae, The Maryland Chamber of Commerce Mid-Atlantic Legal Foundation.

Amy S. Scherr, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on brief), Baltimore, for appellee, Bd. of Appeals.

Bernadette Wolffe (Bruce S. Harrison and Shawe & Rosenthal, on brief), Baltimore, for appellee, Cambridge Wire Cloth Co.

Argued before GARRITY, KARWACKI and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

The only issue presented on this appeal from the judgment of the Circuit Court for Baltimore City is:

> Did Cambridge Wire Cloth, the appellee/employer, make offers of suitable work to the appellants so as to disqualify them from unemployment compensation benefits under Maryland Annotated Code Art. 95A, § 6(d)?

Appellee, Board of Appeals of the Department of Employment and Training, ("Board") found as a fact that it did, and the Circuit Court agreed. Our review of the record convinces us that the Board's findings of fact in this regard are "supported by competent, material and substantial evidence in view of the entire record" and, so, we shall affirm.

### Factual Background

Appellants,[1] members of Local 8678 of the United Steelworkers of America and employees of appellee, Cambridge Wire Cloth Company (Cambridge), voted to, and in fact did, strike Cambridge as a result of a labor dispute over recognition of their union as their bargaining agent. Subsequent to the commencement of the strike, appellants filed for unemployment compensation benefits.

Prior to the applications for unemployment compensation benefits being filed, but after the strike had commenced,

---

**1.** In addition to Harold Adams, the named appellant, 70 individual employees of Cambridge are involved.

Cambridge mailed the following letter to each individual appellant:

Dear Employee:

We are confident of our ability to sustain operations at near normal levels. Our situation will improve each week with new production people coming in. However, we still feel that this strike is not good for the company or the employees, and we would like to have you come back to work.

As in the past, Cambridge Wire Cloth has tried to keep you abreast of the current situation; these are the facts:

....The company shipped 49% of its forecast the first week, 79% the second week, and 83% in the third week.

....We have over 140 people, plus part-timers, putting in direct labor hours on our products.

....We have sufficient capacity to handle our customers' requirements. Incoming orders still are at pre-strike quota levels.

I would like to address the statement made by many striking employees that they are too scared to come back to work. Surely you are not fearful of the people you elected to represent you. Your company does not believe that fear is the type of atmosphere that most of the union members want.

I feel that a very important decision rests with you, and those who are not for the strike, but who have been intimidated by people whom they thought were their friends. Each employee must stand up for what is best for his future.

The real decision is to come back to work, and wait for an orderly solution by the court. The company will abide by the court's decision, and it is still willing to join with the union in an expedited appeal. The 200 people coming to work daily hope you will join us.

This letter, signed by Cambridge's president, was posted on Cambridge's premises and published in the local newspaper. Moreover, in response to a telephone inquiry from the

manager of the local unemployment office, Cambridge re-affirmed the "general offer", which it had made on August 24, 1981, and stated that it continued to be in effect.[2] This fact was communicated to each appellant by claims examiners conducting agency interviews.

Despite the fact that, subsequent to issuing it, Cambridge had decided not to extend the general offer to certain striking employees, all appellants were disqualified, *en masse*, from receiving unemployment benefits. The Board, however, placing particular emphasis on the evidence in the record that the offer would not be extended to all striking employees, reversed the mass disqualifications.[3] With particular reference to § 6(d),[4] the Board observed:

> This general offer of reinstatement is insufficient to cause the Employment Security Administration to invoke an automatic disqualification on all Claimants in this case under section 6(d) of the Law. The whole *raison d'etre* of group hearings, appeals and decisions is simply convenience. When the facts of each individual's case are the same, and no one is prejudiced by a group decision, the law provides in section 7(g) for these group hearings. In this case, a mass decision concerning section 6(d) would clearly be prejudicial to those employees who are not called back to work at all by the employer. No more prejudicial set of facts can be imagined than to be disqualified for refusing a job offer, without a chance for a hearing, when no such job offer was made. Since there is the possibility of prejudice inherent in allowing a group

---

**2.** The telephone conversation occurred on or about November 19, 1981, at the time when the eligibility of appellants for unemployment compensation benefits was to be determined.

**3.** The mass disqualifications were premised upon Md.Ann. Code art. 95A § 4(c), which requires that any unemployed individual, to be eligible to receive benefits, be able and available, i.e., actively seeking work, for each work week in which a claim is filed, and § 6(d), which disqualifies an individual who fails, "without good cause ... to apply for or accept suitable work when offered him...."

**4.** All references are to Md.Ann. Code art. 95A.

decision in this case, the convenience of issuing a mass, comprehensive decision simply must be dispensed with.

\* \* \* \* \* \*

... [T]he refusal to accept suitable work when offered, can be activated by a private employer. This disqualification is triggered only by an offer of suitable work. Since in this case, there was no unequivocal offer of work made to all of the employees, there could be no mass disqualifications under § 6(d),

The Board remanded the cases to the claims examiners for individual determinations as to whether each appellant had been offered suitable work. This Court affirmed the Board's decision in a *per curiam*, unpublished opinion. *Cambridge Wire Cloth Company v. Adams*, No. 452, September Term, 1983, filed January 23, 1984.

At the remand hearings, appellants conceded that Cambridge's letter was mailed to each of the appellants and that it contained a general request that appellants return to work. They also conceded that Cambridge posted the letter on its bulletin board and published it in the local newspaper. Cambridge acknowledged that, subsequent to mailing the letter and notifying unemployment officials that its general offer was continuing in nature, it determined not to rehire certain of the appellants, specifically four persons alleged to have committed acts of violence and vandalism during the labor dispute. Other evidence revealed that all appellants were continuously on strike from August 4, 1981 to the date of the start of the remand hearings. Although appellants' testimony differed in some particulars, all essentially agreed that they were voluntarily on strike and would not return to work until the strike was settled and all employees could return. Appellants contended, as they do here, that the letter was not specific enough to constitute an offer of suitable work.

The appeals referee found disqualification pursuant to § 6(d) was inappropriate, noting:

The company by offering only a vague general "come back to work", in effect, did not offer a genuine suitable job or specify the perimeters of the job so as to, in effect, make a suitable offer to come back to work. Under the circumstances, it was not a suitable offer of employment within the meaning of Section 6(d) of the Maryland Unemployment Insurance Law.

On the other hand, the referee found that appellants were not able and available for work within the meaning of § 4(c). Accordingly, he denied them benefits on that basis.

The Board reversed. It concluded that the referee's conclusions concerning disqualification pursuant to § 4(c) were "clearly wrong". Turning to the referee's findings with regard to disqualification pursuant to § 6(d), the Board found as fact that:

The letter did not list the specific job the Claimant was to perform, the wages, or the other conditions of the employment, but the Claimant was aware of the exact conditions of his former employment. This offer was continuing in nature and was in effect on the date that the Claimant applied for benefits.

It then concluded, as a matter of law, that:

In the circumstances of this case, the employer's letter of August 24, 1981 is an offer of work within the meaning of § 6(d). This offer was still in effect at the time the Claimant filed for benefits. The Board reaches this conclusion despite the fact that the written job offer did not mention any specific duties, salary or working conditions. The Board is not retreating from its historic policy of applying job refusal disqualifications under Section 6(d) only to actual job offers of specific jobs with stated salaries, duties and starting dates. In this case, however, the Board concludes that the offer of work was sufficiently specific, since the Claimant was well aware of the salary and the duties, and the work obviously started immediately. Since the Claimant was offered and refused available suitable work within the meaning of Sec-

tion 6(d), without good cause, he will be disqualified under that Section.

The circuit court affirmed. This appeal followed.

The scope of review of a decision of the Board is statutorily limited by § 7(h) which, in pertinent part, provides:

... the findings of the Board of Appeals as to facts, if supported by competent, material and substantial evidence in view of the entire record, and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law.

*See Barley v. Dept. of Employment Security,* 242 Md. 102, 105, 218 A.2d 24 (1966). Where the Board's findings of facts are supported by substantial evidence in the record, they are binding on the reviewing court. *Employment Security and Board v. LeCates,* 218 Md. 202, 207, 145 A.2d 840 (1958); *Painter v. Dept. of Employment Training,* 68 Md.App. 356, 360, 511 A.2d 585 (1986). Such findings are supported by substantial evidence if, from the facts and permissible inferences in the record before the court, reasoning minds could reach the same result. *Baltimore Lutheran High School Assoc. v. Employment Security Administration,* 302 Md. 649, 662, 490 A.2d 701 (1985); *Painter, supra; Commissioner v. Cason,* 34 Md.App. 487, 508, 368 A.2d 1067 (1977). Thus, in the absence of an allegation of fraud, which has not been made here, we may reject the Board's decision only if it is not supported by substantial evidence or it is wrong as a matter of law. § 7(h). *See Barley, supra,* 242 Md. at 107–08, 218 A.2d 24 ("The determination of the facts in regard to whether or not a claimant has ... accepted suitable work when offered to the claimant is especially within the expertise of the administrative officials administering the Unemployment Insurance Law, involving as it does many subtle considerations and nuances of fact which need evaluation by those trained to make that evaluation."); *Morgan v. Anchor Motor Freight, Inc.,* 506 A.2d 185, 188 (Del.Super.1986) (when the scope of review is "limited to a determination of whether there was substantial evidence in the record ... and wheth-

er those findings are free of legal error", ... "in order to prevail on appeal, a claimant must show an error of law on the part of the Board, for the Board's findings of fact are conclusive unless they are the result of fraud or are unsupported by the evidence").

Appellants are aware of the scope of review; nevertheless, they argue that the Cambridge letter "did not constitute an offer of suitable work so as to disqualify [them] from receiving unemployment benefits ... [because] it did not contain dates, duration, wages, or any of the 'essential elements' of a reemployment offer." By so arguing, they apparently suggest that whether a particular communication constitutes an offer of suitable work is a question of law. Neither logic[5] nor the cases which have considered the issue supports this position.[6]

█ Appellants correctly point out that "[a]n offer that is vague, speculative, and lacking in detail is no offer at all", *Calabi v. Dept. of Employment Security*, 135 Vt. 392, 376 A.2d 349, 350 (1977); *see also Kartridg-Pak Company v. Johnston, Director of Labor*, 28 Ill.2d 616, 192 N.E.2d 867 (1963). They fail to recognize, however, that whether a particular communication is so vague, speculative, or lacking in detail as to constitute no offer at all is largely a

---

5. It would indeed be illogical to presume that an employee who, just prior to a strike, was occupying a position with the employer, and who is asked to return to work, would not know, in the absence of detailed information, the job being offered, or the conditions of his or her employment.

6. We might mention that, given its peculiar nature, the issue would appear to be at best a mixed question of law and fact, involving, as it does, "the application of the facts to the applicable legal test, and not the law governing that test." *Thames Point Associates v. Supervisor of Assessments of Baltimore City*, 68 Md.App. 1, 17, 509 A.2d 1207 (1986). *See also* the language quoted from *Barley, supra* at 7. The standard applicable to a review of such an issue is "whether, in light of substantial evidence appearing in the record, ... a reasoning mind could reasonably have reached the conclusion reached by [the Board] consistent with a proper application of [the test for determining if an offer of suitable employment had been made]." *Ramsay, Scarlett & Co. v. Comptroller*, 302 Md. 825, 838, 490 A.2d 1296 (1985).

question of fact to be determined in light of all the surrounding circumstances. *Barley, supra; Morgan v. Anchor Motor Freight, Inc., supra; Johnston v. Chrysler Corporation,* 54 Del. 279, 178 A.2d 459 (1962); *Losordo v. Dept. of Employment Security,* 141 Vt. 391, 449 A.2d 941 (1982); *Arizona Dept. of Economic Security v. Magma Copper Company,* 125 Ariz. 27, 607 P.2d 10 (Ct.App.1979); *Larson v. Pelican Lake Nursing Home,* 353 N.W.2d 647 (Minn.App.1984); *LaSalle Cartage Co., Inc. v. Hampton,* 362 N.W.2d 337 (Minn.App.1985).

In *Johnston, supra,* the claimant, who was laid off from Chrysler Corporation, received a notice to

[r]eport to the Employment office for interview at 9:30 A.M., Tuesday, October 18, 1960. Please bring ... social security card and this card with you.

Despite the generality of the notice, the Court affirmed the agency's denial of the claimant's application for unemployment benefits. The Court recognized that

On its face ... the notice is nothing more than direction to the claimant to report to Chrysler's employment office for interview. It does not refer to a particular job, to rate of pay, hours of work, or to the other conditions of employment. We would suppose, therefore, that none would disagree that, alone, the notice did not in a legal sense, constitute an "offer of work".

Nevertheless, reasoning that when the notice is considered in light of the existence of a work contract between Chrysler and the union, of which the claimant was a member, and the fact that Chrysler was hiring, it agreed with the agency that the notice was sufficient to inform claimant of an offer of work, the exact nature of which should have been investigated as a condition precedent to the receipt of unemployment compensation. 178 A.2d at 462. A similar analysis was employed in *Morgan v. Anchor Motor Freight, Inc., supra.* There, a "Notice To All Drivers" was posted which, in pertinent part, stated: "[A]nyone who is interested in working in other terminals contact the dispatcher on duty at

the time of dispatch today." The collective bargaining agreement between the union, of which claimants were a part, and the company did not require an employee to accept work at other terminals during temporary shutdowns of their home terminal and there was a substantial dispute between the parties as to whether the employer had ever made an offer of work to the claimants. In affirming the agency decision denying benefits, the Court said:

> Though contrary inferences could have been drawn from the record as to the existence and suitability of the "offer of work", it is not the function of this Court to substitute its judgment for that of the Board.

506 A.2d at 189.

Although recognizing that "a preliminary overture or invitation to apply for work does not normally constitute an offer", the Court in *Magma Copper Company* upheld the agency's factual finding that, under the circumstances there existing, an invitation to apply for transfer did constitute a firm and unqualified offer of employment. 607 P.2d at 12. *See also LaSalle Cartage Co., Inc. v. Hampton, supra,* 362 N.W.2d at 339–42, in which the agency's factual determination that a recall letter stating only that "this is a letter of recall under section 43 of the National Master Freight Agreement"[7] constituted an offer of reemployment was affirmed by the Court; *Larson v. Pelican Lake Nursing Home, supra,* (agency factual determination that neither offer to claimant, due to return from maternity leave, to work on call until new schedule prepared nor notice that claimant would be on a new work schedule with hours on either the day or night shifts, was supported by the record).

---

7. Section 43 of that agreement, provided in pertinent part:
   In the event of a layoff, an employee so laid off shall be given ten (10) days notice of recall mailed to his last known address. The employee must respond to such notice within three days after receipt thereof and actually report to work in seven days after receipt of the notice unless otherwise mutually agreed to. In the event the employee fails to comply with the above, he will lose all seniority rights under this agreement.

Appellants can obtain no solace from the cases cited in their brief. *Kartridg-Pak, supra,* is more supportive of appellees' position. Not only did the Court state the issue as "... whether the finding of the board that plaintiff did not make an offer of employment to claimant is against the manifest weight of the evidence", 192 N.E.2d at 870; but it also determined that "... any consideration as to the detail which an offer of employment should contain is rendered unnecessary" by a finding that it is not. 192 N.E.2d at 871. Likewise, the Court in *Tackett v. Continental College of Beauty,* 96 Idaho 634, 534 P.2d 464 (1975) found that the agency's conclusion that no job offer was made to the claimant was supported by substantial and competent evidence. 534 P.2d at 465. The decision in *Tripp v. Alley Construction Company, Inc.,* 297 Minn. 232, 210 N.W.2d 668 (1973) is subject to the identical analysis.

■ There was ample evidence, including permissible inferences deducible from the facts in the record before the Board, from which the Board could conclude that the Cambridge letter was an offer of suitable employment. Aside from appellants' concession that the Cambridge letter was mailed, posted and published, the record contains evidence that each of the appellants was employed by Cambridge prior to the strike. From that evidence and the short lapse of time between the beginning of the strike and the issuance of the letter, it is easily inferred that each appellant was aware of the exact nature of that employment, including the position, wages and other conditions of employment. Furthermore, it is also inferable that each appellant was aware that the offer of employment was to begin immediately. Thus, the situation existing in this case is totally different from that in *Calabi, supra. See Losordo v. Dept. of Employment Security, supra,* 449 A.2d at 944, (Peck, J., concurring).

■ Appellants finally contend that, "because the appellee Cambridge Wire Cloth knew in August when it issued the letters that some of the striking employees would *not*

be welcomed back, the offer was not made in good faith to each employee, and was therefore invalid." (emphasis in the original) We disagree. Although not explicitly set out in its findings of fact, implicit in the Board's decision is a determination that the Cambridge letter of August 24, 1981 was made in good faith to all Cambridge employees. There is evidence in the record to support the fact that the decision not to rehire some of the striking employees was not made until well after the strike had commenced and the offer made. We therefore reject appellants' contention.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.